# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICK KUTZMAN and**<br>**JAMIE LEONARDO, individuals,**<br>**and on behalf of themselves,**<br>**and on behalf of others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DERREL'S MINI STORAGE, INC.,**<br>a California corporation<br><br>**Defendant.** | CASE NO. 1:18-CV-755 AWI-JLT<br><br>**ORDER ON PLAINTIFFS'**<br>**MOTION TO INVALIDATE**<br>**SETTLEMENT AGREEMENTS AND**<br>**SEND CURATIVE NOTICE TO**<br>**PUTATIVE CLASS MEMBERS**<br><br>(Doc. No. 19) |

In a class action, where is the line between a party's permissible *ex parte* communications with putative class members and those to be deemed misleading, obfuscating, or coercive?

In the fall of 2018, Defendant Derrel's Mini Storage sent letters to and hosted voluntary informational sessions for their current and former employees—all putative class members in Rick Kutzman and Jamie Leonardo's wage-and-hour class action suit. Defendant's ultimate purpose was to obtain a settlement and release with these individual putative class members. Plaintiffs contend the communications were coercive, arguing they contained factual inaccuracies, omitted material facts, disparaged named Plaintiffs and their counsel, and were otherwise misleading. They now request for the Court to invalidate any executed settlement agreements, to send a curative notice to all putative class members, and to bar all communications between Defendant and the absent class members about the case. Defendant maintains its conduct was both lawful and appropriate, and requests the Court deny Plaintiffs' motion.

For the reasons that follow, the Court will grant the motion in part and deny in part.

*Background*

Plaintiffs Kutzman and Leonardo worked for Derrel's Mini Storage from October 2017 to February 2018. *See* Doc. No. 12. They allege that during this time, Defendant required employees to sign a background check authorization that included an unlawful credit check provision, and failed to provide the required rest breaks, accurately pay overtime, compensate them for business expenses, or provide them with complete and accurate wage statements. *Id*. Plaintiffs filed a class-action complaint in California state court, and Defendant removed to this Court. Doc. No. 1. Plaintiffs sought remand, which this Court denied on July 31. Doc. No. 15.

On August 21, 2018, the parties informed Magistrate Judge Thurston of their intent to mediate, set for December 13, 2018. *See* Doc. No. 17. The day prior, Defendant sent a letter to its current employees, as putative class members, generally notifying them of the existence of the class lawsuit and the possibility that Plaintiffs' counsel may contact them. Doc. No. 22-1 at p. 4 (Ex. 1, the "Letter to Current Employees"). This letter stated Defendant was open to speaking with any concerned employees, would not retaliate against any employees who choose to speak with Plaintiffs, and otherwise generally disputed the claims. *Id*. It also referred to Kutzman and Leonardo as employees "that worked for the company for less than six months," misstated the name of Plaintiffs' counsel's firm, failed to include a copy of the complaint, and omitted the case number, this Court's information, and any details about the scheduled mediation. *Id*. The letter states it advises employees about "your rights involving this lawsuit," states "we appreciate all of our employees and respect your hard work," and refers to Plaintiffs' counsel as "out of town attorneys." *Id*. One current employee stated he felt the letter, "which was purportedly sent by Defendant 'to inform' me about the lawsuit is, in fact, blatantly one-sided and decidedly <u>un</u>informative." Doc. No. 19-4 at ¶ 4 (Pomilla decl.) (emphasis in original).

On September 12, current employees were invited to a "voluntary" meeting in Bakersfield, CA to "'update' them on the status of the case." *Id*. at ¶ 10. There, a paralegal for defense counsel read a prepared statement that included the case name and number, the correct name of Plaintiffs' counsel, a detailed list of Plaintiffs' claims, the Company's general disagreement with the claims, and the employees right to independent counsel. Doc. No. 21-2 at p. 5 (Ex A to

2

Covarrubias decl.). This "Meeting Statement" also called for the paralegal to state that the company was looking for "your understanding of the facts," as well as that "[e]ven though [Derrel's] believes the lawsuit has no merit, [it] wishes to pay YOU and other employees, instead of the out of town attorneys to end the lawsuit and focus on getting the company back up to speed and getting more employees back to work." *Id*. At this meeting, Defendant provided a copy of the operative complaint, and showed the employees a settlement and release agreement, with a specific amount of consideration detailed for each employee. *Id*.; Doc. No. 19-4 at ¶ 10. Before employees left, Defendant collected the settlement papers. *Id*. One current employee stated he was left feeling like he had little choice whether to accept settlement, that he should "fall in line." *Id*. at ¶ 11. A copy of the settlement agreement was sent to this employee in mid-October. *Id*.

Additionally, in mid-October, Defendant mailed a letter (similar to the Letter to Current Employees) to those former employees it deemed members of the putative class. Doc. No. 22-1 at p. 6. (Ex. 2, the "Letter to Former Employees"). This letter, entitled "Offer to Employees to Settle Individual Wage and Hour Claims," listed Plaintiffs' names, the case number and court name, a general description of Plaintiffs' claims and Defendant's "strong" denial of liability, the right to seek counsel, and the correct name of Plaintiffs' counsel's firm. *Id*. However, it misspelled counsel's name multiple times and omitted the firms contact information, as well as any indication about the scheduled mediation. *Id*. It also repeated the "significant" payout to "out of town attorneys" line, and stated "[s]ettlement with you now will allow us to move on with our business and frankly, we would rather pay you than pay attorneys a lot of money in legal fees and costs." *Id*. Included with the letter was a copy of the settlement agreement and release form, but not the operative complaint. *Id*. One former employee stated the culmination of the above statements, mistakes, and omissions "feels like pressure to sign." Doc. No. 19-3 at ¶ 9 (Madden decl.).

Plaintiffs now requests the Court order a notice be sent to all putative class members curing the defects and invalidating any executed settlement agreements. Doc. No. 19. They also request a prophylactic order barring Defendant from communicating with the class about the case, arguing its communications demonstrate an intent to mislead and coerce. *Id*. Defendant objects to any such relief, contending their communications are allowed and acceptable. Doc. No. 21.

*Parties' Arguments*

Plaintiffs contend Defendant's *ex parte* communications with putative class members were rife with omissions, misleading statements, inaccuracies, and inflammatory language that demonstrate an effort to coerce class members into opting-out of the class. Doc. No. 19. Plaintiffs therefore argue Court intervention is required to protect the putative class members. They request the Court invalidate any executed settlement agreements, and otherwise generally provide to all putative class members a factually-correct and unbiased notice of the claims and status of the case. Plaintiffs also request the Court issue an order prohibiting Defendant from communicating further with class members "about settlement or the value of their claims without the consent of Plaintiffs or, in the alternative, without Court approval."

Defendant generally opposes these requests, arguing the rules allow it to contact putative class members about settlement, and its communications were not misleading or coercive. Doc. No. 21. Defendant maintains the current employees were given a copy of the complaint at a voluntary company meeting, and all putative class members otherwise had enough information to make an independent, informed decision. The company contends the text of each letter itself demonstrates an unbiased presentation of the case, whereas Plaintiffs' affidavits supporting the coercive nature of the letters—made by proposed additional named plaintiffs— are self-serving. Defendant concludes that since nothing in the communications indicates coercion, the Court need not invalidate any agreement or issue a curative notice, much less issue a complete ban on its communications with the putative class members.

**A. Defendant's *ex parte* communications with putative class members, on the whole, were misleading, obfuscating, and potentially coercive**

*Legal Standard*

Before a class is certified, counsel for both parties maintain a free-speech right to communicate with putative class members, *ex parte*, about the lawsuit—including a right to offer to settle. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981); *see also Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016) ("The parties (and non-parties) are free to encourage class members to opt out of or vote against a class

4

action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions."). However, "when a party engages in behavior that threatens the fairness of the litigation," the court has "both the duty and the broad authority [to] regulate of the notice and opt-out processes and impose limitations" on the parties. *Gulf Oil*, 452 U.S. at 100; *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74, 181 L. Ed. 2d 1 (2011); Rule 23(d)(1)[1] (granting authority to "impose conditions on the representative parties . . . or deal with similar procedural matters."); *see also* Adv. Comm. Notes to Rule 23 ("Subdivision (d) is concerned with the fair and efficient conduct of the action[.]"); Manual Complex Lit. § 21.12 (4th ed.) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a [Rule 23(b)(3)] class . . . .").

*Analysis*

The question for many courts that have confronted this issue has been discerning the line between permissible communications and those considered unwarranted, unethical, or unlawful. *See Talavera v. Leprino Foods Co.*, 2016 U.S. Dist. LEXIS 29633, *14-15 (E.D. Cal. Mar. 8, 2016) ("Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication.") (citing *Bobryk v. Durand Glass Manufacturing Co.*, 2013 WL 5574504, at *5-6 (D.N.J. Oct. 9, 2013) (noting "the absence of a bright-line rule controlling pre-certification communications" requires courts to assess "whether the factual circumstances surrounding *ex parte* communications" warrants judicial intervention). To ground this discussion, it is helpful to begin with the source of a court's authority to manage communications in class actions: Rule 23. When notifying absent class members (in a 23(b)(3)) case about, for example, notice of class certification, the federal rules call for "the best notice practicable." Rule 23(c)(2)(B). The notice is to state, "in plain, easily understood language:"

---

[1] Any citation to the "Rule" or "Rules" is to the Federal Rules of Civil Procedure, unless otherwise stated.

5

    (i) the nature of the action;
    (ii) the definition of the class certified;
    (iii) the class claims, issues, or defenses;
    (iv) that a class member may enter an appearance through an attorney if desire[d];
    (v) that the court will exclude from the class any member who requests exclusion;
    (vi) the time and manner for requesting exclusion; and
    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Many courts have relied on these principles when considering a party's *ex parte* communications with putative class members. *See McKee v. Audible, Inc.*, 2018 WL 2422582, at *4 (C.D. Cal. Apr. 6, 2018) ("The best notice [offering settlement] will 'contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member.'") (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104 (5th Cir. 1977)); *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal. Apr 15, 2014) ("The best practicable notice [for settlement offers made to putative class members] envisioned by Rule 23 'conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class.'") (quoting *Kleiner v. The First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("[A] unilateral communications scheme is rife with potential for coercion."); *see also Wang*, 623 F.3d at 756 (citing *Kleiner* with approval, and discussing the "best notice practicable" standard in the context of Rule 23(d) management of communications with putative class members).

        Thus, in circumstances where the *ex parte* communication contains an adequate description of the proceedings, expressed in objective, neutral terms, courts have been unwilling to interfere with the party's free-speech right to discuss the case—including settlement—with putative class members. *See Swamy v. Title Source, Inc.*, 2017 WL 5196780 at *5 (N.D. Cal. Nov. 10, 2017) (finding company's *ex parte* communications with employees contained no misleading, intimidating, or otherwise improper information where company CEO accurately stated that the company believed the suit lacked merit, commented that any opt-in plaintiffs would have to participate in discovery, and otherwise might have to pay costs if plaintiffs lost); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (declining to manage pre-cert communications under Rule 23(d) where company's *ex parte* internal memo to employees suggested they direct questions to the company's general counsel, offered no legal advice, and did

6

not suggest retaliation if an employee opted-in).

Conversely, courts have found "conduct threatening the fairness of the litigation" in a wide variety of contexts. This generally entails parsing the specific communications, as well as the party's relationship to the putative class members, to get at whether the putative class members were misled or coerced by *ex parte* communications from a party. *See Romero v. May Trucking Company*, 2018 U.S. Dist. LEXIS 194519 (C.D. Cal. Mar. 15, 2018) and Doc. No. 19-2 (Ex. 1, Order Granting Curative Notice) (invalidating settlements and ordering curative notice where employer, when soliciting agreements from employees *ex parte* in a wage-and-hour suit, failed to identify in its letter the existence of case or the employees' status as putative class members, inserted dire information about the health of defendant's business, failed to provide the contact information of plaintiffs' counsel, and alluded to the greed of plaintiffs' counsel by making statements like "[w]e are concerned that the only ones who will benefit by these new cases are the attorneys (both theirs and ours)."); *Marino v. CACafe, Inc.*, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) (finding that while the case did not present the "high degree of coercion present in other cases," defendant's communications were misleading and concealed material information, where letter did not inform absent class of the status or existence of the case, the nature of the claims, opposing counsel's contact information, "or any other information that might have permitted them . . . to make an informed decision about the waiver of their rights."); *Slavkov v. Fast Water Heater I, LP*, 2015 U.S. Dist. LEXIS 149013 (N.D. Cal. Nov. 2, 2015) (finding employer's communications with employees were misleading and potentially harmful, where letter omitted significant information regarding employees' legal rights and could have been perceived as restricting contact with opposing counsel—despite other assertions in the letter recommending employees contact them); *Camp*, 300 F.R.D. at 624 (invalidating opt-outs obtained by defendant-employer's letter to employees stating the class action was "motivated by greed and other improper factors" and "could result in the closure" of the business, and failed to include any explanation of plaintiffs' claims, a copy of the complaint, or contact information for plaintiffs' counsel); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating opt-out forms when defendant employer presented the forms in mandatory one-on-

one meetings during work hours, failed to provide forms in workers' primary language, and refused to give workers copies to take the forms home); *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512 (N.D. Cal. July 8, 2010) (invalidating releases obtained via letter to putative class that did not attach plaintiffs' complaint, explain plaintiffs' claims or the status of the case, or include contact information for plaintiffs' counsel). Courts have been particularly wary in the context of employee/employer relationships, given the power dynamic "increases the possibility of coercion," but have also stated "it is not enough that a potentially coercive situation exists." *In re M.L. Stern Overtime Litigation*, 250 F.R.D. 492, 498 (S.D. Cal. 2008); *cf. Camp*, 300 F.R.D. at 624 (noting that in addition to defendant-employer's coercive actions, employer-employee contact is particularly prone to coercion); *Guifu Li*, 270 FRD at 517 (finding in the context of class action litigation, whether pre- or post-certification, unsupervised communications between an employer and its workers present an acute risk of coercion and abuse); *see also Wang v. Chinese Daily News*, 236 F.R.D. 485 (C.D. Cal. 2006) (noting improper tampering of opt-outs is enhanced where the class and class opponent are involved in an ongoing business relationship).

The Court gives extensive treatment to these cases for a particular reason: none of Defendant's individual acts here rises to such an egregious level that makes it immediately analogous to prior cases. However, on the whole the Court cannot ignore the potential that some putative class members may have been coerced into settling, based on the wide-ranging number of misstatements, material omissions, and slights against named Plaintiffs and their counsel. *Slavkov v. Fast Water Heater I, LP*, 2015 U.S. Dist. LEXIS 149013, at *5 ("An order under Gulf Oil does not require a finding of actual misconduct—rather, the key is whether there is 'potential interference' with the rights of the parties in a class action."); *O'Connor v. Uber Techs., Inc.,* 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) ("*Gulf Oil* noted the 'obvious potential for confusion' and adverse effect on the 'administration of justice' that misleading communications may cause.") (quoting *Gulf Oil*, 452 U.S. at 100 n. 12).

On the positive side for Defendant, there are many times when it appears to be following the proper playbook, taking steps to inform its current and former employees about the suit in plain, neutral terms. When Defendant initially contacted its current employees in August of 2018,

it notified them about the existence of the case and the possibility that Plaintiffs' counsel may contact them. Doc. No. 22-1 at p. 4. This letter stated Defendant was open to speaking with any concerned employees, would not retaliate against any employees who choose to speak with Plaintiffs, and otherwise generally disputed Plaintiffs' claims. *Id*. Defendant also hosted an optional meeting for current employees to "'update' them on the status of the case." *Id*. at ¶ 10. There, a paralegal for defense counsel read a prepared statement that included the case name and number, the correct name of Plaintiffs' counsel, a detailed list of Plaintiffs' claims, the Company's general dispute of the claims, and the employees right to independent counsel. Doc. No. 21-2 at p. 5. The paralegal solicited these employees' "understanding of the facts," and provided a copy of the operative complaint alongside a settlement agreement. *Id*.; Doc. No. 19-4 at ¶ 10. Additionally, in mid-October, Defendant mailed a letter to those former employees it deemed members of the putative class. Doc. No. 22-1 at p. 6. This letter, entitled "Offer to Employees to Settle Individual Wage and Hour Claims," listed Plaintiffs' names, the case number and court name, a general description of Plaintiffs' claims and Defendant's "strong" denial of liability, the right to seek counsel, and the correct name of Plaintiffs' counsel's firm. *Id*. Had these things been consistently presented in the *ex parte* communications, it is unlikely the Court would have found them misleading, must less potentially coercive. *Gulf Oil*, 452 U.S. 99-100 (parties have a free speech right to talk with putative class members). These facts demonstrate an effort to provide a plain-language, neutral account of the claims, Defendant's adverse position, its offer to settle, and a place where the employees could get the other side of the story—from Plaintiffs' counsel. *See ML Stern*, 250 F.R.D. at 498.

However, as Plaintiffs point out, the above information was not consistently presented throughout Defendant's communications. At no time were any of the putative class members apprised of the status of the case, including that the parties had scheduled a mediation in mid-December—a critical fact one might want to consider before deciding to settle. *Marino*, 2017 WL 1540717 (finding letter was misleading where, *inter alia*, it did not inform absent class of the status of the case); *County of Santa Clara*, 2010 WL 2724512 (same). Neither of the Letters contained a copy of the complaint. *Camp*, 300 F.R.D. at 624 (failure to include a copy of the

complaint added to misleading nature of communications); *County of Santa Clara*, 2010 WL 2724512 (same). The Letter to Current Employees omits the case name or number, Court information, or the correct name or contact information for Plaintiffs' counsel. Doc. No. 22-1 at p. 4. *See ML Stern,* 250 F.R.D. at 498. ("The inclusion of opposing counsel's information is critical, because it gives the putative class direct access to get "the other side of the story" regarding the settlement offer."); *see also Romero*, 2018 U.S. Dist. LEXIS 194519 (failure to provide the contact information of plaintiffs' counsel considered); *Marino*, 2017 WL 1540717 (same); *Camp*, 300 F.R.D. at 624 (same). While Defendant is correct that most of this information was provided to the current employees who attended the voluntary meeting in September, it is highly probable that some current employees chose not to attend; therefore the Court cannot say that Defendant's valiant efforts to cure its mistakes were effective. *Slavkov*, 2015 U.S. Dist. LEXIS 149013 ("[I]t is important to remember that the critical inquiry is not whether the agreement in fact prohibits any interaction with Plaintiffs' counsel, but rather whether it would be perceived as doing so, and in turn, whether that perception would cause "potential interference" with the putative class's rights under *Gulf Oil*."). Further, those employees that did attend were not allowed to take the settlement and release information with them, but had to wait another month before they could fully review Defendant's terms—either on their own or with independent counsel. *Guifu Li*, 270 F.R.D. at 518 (invalidating opt-out forms when defendant refused to give workers copies to take the forms home); *ML Stern*, 250 F.R.D. at 500-01 (finding limited amount of time to review settlement added to potential coerciveness, ordering curative notice). These actions are misleading, obfuscating, and only serve to counter Defendant's neutral statements listed above.

Further, each of the communications also contained a number of slights, disparaging remarks, and off-handed comments that are not only unbecoming of the profession, but are simply immaterial to the facts of the case. Absent class members were told that named Plaintiffs only "worked for the company for less than six months," and Plaintiffs' counsel were repeatedly referred to as the "out of town attorneys" who would receive a "significant" payout—to the detriment of the class. Doc. No. 22-1 at pp. 4-5, 7. When paired with statements that imply the company and putative class were not adverse (advising the putative class about "your rights

involving this lawsuit," stating "we appreciate all of our employees and respect your hard work."), the Court can only draw the inference that these comments were inserted to coerce the employees into settling. *See Romero*, 2018 U.S. Dist. LEXIS 194519 (invalidating settlements where employer, *inter alia*, alluded to the greed of plaintiffs' counsel by discussing how much money they would make compared to successful plaintiffs—"We are concerned that the only ones who will benefit by these new cases are the attorneys (both theirs and ours)."); *Camp*, 300 F.R.D. at 624 (invalidating opt-outs obtained by defendant-employer's letter to employees stating the class action was "motivated by greed and other improper factors."); *Guifu Li*, 270 FRD at 517 (employee/employer relationship plus bad acts equals coercion). Comments like these only go toward negating the positive statements (i.e. that Defendant would not retaliate), and some putative class members have declared they believed the communications made them feel like they should "fall in line" and sign. See Doc. No. 19-3 at ¶ 9; Doc. No. 19-4 at ¶ 4; *Slavkov*, 2015 U.S. Dist. LEXIS 149013 (finding employer's communications with employees could have been perceived as restricting contact with opposing counsel—despite other assertions recommending contact).

      Defendant contends its conduct does not rise to the level of any of Plaintiffs' cited cases, and would likely argue the same for the cases cited by the Court. In one sense, Defendant is correct. Many of the above cases revolved around one or two key acts that are much more egregious than anything Defendant has done here. Defendant made no overt threats to its employees, did discuss some aspects of the case at various times with the putative members, and advised them to seek outside counsel before agreeing to settle. However, the standard is one requiring the facts be examined in totality; as such, the Court finds Plaintiffs have met their burden to show misleading and coercive conduct on Defendant's part. *See Marino*, 2017 WL 1540717 (taking action under Rule 23 even though the case did not present the "high degree of coercion present in other cases."); *Talavera*, 2016 U.S. Dist. LEXIS 29633 at *14-15 ("Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication.").

**B. Given the significant number of minor errant acts, the appropriate remedy is to send a curative notice to the putative class, make all settlement agreements void<u>able</u>, make Defendant to shoulder these costs, and consider awarding fees for this motion.**

Now that the Court has determined errant behavior exists, the question becomes, what remedy is appropriate? Plaintiffs request that Defendant be banned from communicating with putative class members about the case, as well as an invalidation of all settlement agreements. Defendant says those remedies are unnecessary, as is a curative notice. As the Court has indicated above, Defendant's conduct is culpable, but not to the same extent as many of the cases cited. Thus, the Court will tailor the remedy to the facts of this case.

*Legal Standard*

In the Ninth Circuit alone, the remedial measures that have been imposed by courts run the gamut. Many will consider a simple reformation of the notice. *See ML Stern,* 250 F.R.D. at 500-01 (stating that curative notice is commonly granted by courts to mitigate the impact of misleading or deceptive information that has been disseminated about a class action); *Pollar v. Judson Steel Corp.*, 33 FEP Cases 1870, at *1 (N.D. Cal. 1984) (ordering the defendants to publish an amended notice in the local newspapers and to send copies to all individuals to whom copies of the original notice had been sent). Invalidation of settlements is also a permissible remedy in the Ninth Circuit. *See Camp*, 300 F.R.D. at 624 and *Guifu Li*, 270 F.R.D. at 518 (each citing to *Wang*, 623 F.3d at 756); *but see Tolmasoff v. General Motors, LLC*, 2016 WL 3548219 (E.D. Mich., June 30, 2016) (refusing to consider invalidation of settlement agreements under Rule 23 where parties did not present arguments couched in traditional contract principles).

The power to manage class actions also includes a prophylactic power to control for future errant behavior. *Gulf Oil*, 452 U.S. at 100. However, any restriction on communications must be balanced against a party's free-speech right to communicate with the putative class, *ex parte*, about the lawsuit. *Id.* at 99–100. Thus, a court may not limit communications between parties and potential class members unless there exists a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101; *Wang*, 623 F.3d at 755–56; *see also Kleiner*, 751 F.2d at 1201–03 (holding that a

1 district court's power to manage a class action included the power to prohibit a defendant from
2 making unsupervised, unilateral communications with the putative class); *In re School Asbestos*
3 *Litigation*, 842 F.2d 671, 680 (3d Cir. 1988) (holding that upon making "a clear record and
4 specific findings," a district court could control communications because "[m]isleading
5 communications to class members concerning the litigation pose a serious threat to the fairness of
6 the litigation process, the adequacy of representation and the administration of justice generally.").
7 Any resulting order should limit speech as little as possible. *Gulf Oil*, 452 U.S. at 102. An order
8 restricting communication "does not require a finding of actual misconduct" − rather, "[t]he key is
9 whether there is 'potential interference' with the rights of the parties in a class action." *McKee*,
10 2018 WL 2422582, at *4 (quoting *Gulf Oil*, 452 U.S. at 101). The moving party bears of the
11 burden of establishing "the particular abuses by which it is threatened." *Id*. at 102; *see also ML*
12 *Stern,* 250 F.R.D. at 496 ("It is not enough that a *potentially* coercive situation exists . . . . The
13 court cannot issue [a communications ban] without evidence that a potential for serious abuse
14 exists.").

15 Overall, a court may only impose "the narrowest possible relief which would protect the
16 respective parties." *Gulf Oil*, 452 U.S. at 102.

*Analysis*

18 The Court believes a complete communications ban is unnecessary, given the finding that
19 Defendant's misleading and coercive acts are merely a number of slights, omissions, and
20 misstatements. *Cf. Guifu Li*, 270 FRD at 517 (refusing to ban all communications in a much more
21 egregious case, where employer presented the forms in mandatory one-on-one meetings during
22 work hours, failed to provide forms in workers' primary language, and refused to give workers
23 copies to take the forms home) (citing *Gulf Oil*, 452 U.S. at 102) *with Wright v. Adventures*
24 *Rolling Cross Country, Inc.*, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (enjoining
25 defendants from communicating with potential class members after they e-mailed members
26 warning that if they participate in the suit, their "past transgressions will become very public" and
27 they will be "left with tattered reputations and substantial legal bills").
28 / / /

In terms of remedies, this case is most closely analogous to *ML Stern*. 250 F.R.D. 492. There, the CEO of defendant corporation sent a letter to executive-level employees about a pending wage-and-hour class action. *Id*. at 498-99. The letter began by thanking the employees for responding to an earlier survey, and stated its purpose was to update the executives on the lawsuit as well as an outline of "a plan to offer compensation to you in exchange for a release of your claims . . . ." *Id*. at 494-95. The letter outlined the claims and described the potential outcomes of the case, no matter who won the case. *Id*. at 495. It also described the company's plan to aggressively defend against the claims, even going so far as to compare the strengths and weakness of the plaintiffs' claims against other recent wage-and-hour suits. *Id*. It detailed the amount the company was willing to offer in settlement, suggested employees could receive more or less if they decided to join the class suit, but that in no instance would the company retaliate based on the employee's choice. *Id*. The letter concluded with suggestions to contact outside counsel and "decide for yourself" how to proceed. *Id*. Plaintiffs sought a curative notice and a restriction on *ex parte* communications, calling the letter "inappropriate, prejudicial to plaintiffs, [and] disrespectful to the judicial process . . . ." *Id*. The court, though, declined to order a ban on any communications, nor one invalidating any executed agreements, finding the company letter "for the most part an even-handed, albeit allowably partisan, communication." *Id*. at 498-99. The *ML Stern* court did order a reformed letter be sent to the executives—as the original referred offhandedly to the health of the business and only gave the employees a short time to consider the settlement— but the court found any misperception could be easily rectified via a curative letter. *Id*.

Here, the Court finds Defendant's errant acts (*see* Section I.A.) can mostly be cured via a notice to the class. Like *ML Stern*, many of the slights and off-handed remarks can be easily removed from a reformed letter to the class, and the correct name of Plaintiffs' counsel's firm, contact information, and statement of the case can easily be listed. *Id*. at 498-99. To this end, the parties are to meet and confer on specific language of a reformed notice, and submit proposed language to the Court within ten days of service of this order. Once approved, Defendant shall send this reformed letter and copy of the complaint to all putative class members, alongside any

14

settlement offer and release it wishes to include. Defendant shall give ample time to the putative class members to decide whether to accept, *see ML Stern*, and shall encourage them to discuss the issue with Plaintiffs' counsel as well as independent counsel. In designing this reformed notice, the Court reminds *both* parties that the primary purpose here is "to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." *O'Connor,* 2014 WL 1760314, at *8 (quoting *Kleiner*, 751 F.2d at 1203).

As to a blanket invalidation of all settlement agreements, the Court partially agrees with Defendant that this may be too extreme a remedy, given the facts. However, the Court has also found the potential for coercion, and will not leave any putative class members without a remedy should they feel they were misled or coerced into signing. Therefore, the Court will make all settlement agreements and release of claims <u>voidable</u>, at the election of each individual putative class member.[2] When the parties meet and confer, they shall draft a separate statement to be included with the reformed notice, deliverable to all putative class members that accepted Defendant's offer to settle and signed the release. This notice of voidability should be submitted to the Court for approval, along with the reformed notice.

Further, the Court will require Defendant to shoulder the cost of notice to all putative class members, since it is because of its actions that the Court has had to intervene. *See Laguna v. Coverall N. Am., Inc.*, 2010 WL 11508987, at *11 (S.D. Cal. Nov. 30, 2010) ("In the past, courts have ordered defendants to bear the expense of issuing curative notice where they were found to have acted unfairly and in bad faith. Because defendants here appear to have conducted these meetings for the purposes of presenting their own one-sided account of the case and discouraging workers from joining the suit, the court orders defendants to pay the cost of mailing the final versions of the curative notice to any and all prospective class members with whom they have had contact regarding this litigation.").

Finally, the Court cannot countenance Defense counsel's actions in attempting to mislead

---

[2] The Court has reviewed the evidence presented by Mr. Pomilla and Mr. Madden stating that they felt coerced by Defendant's actions. *See* Doc. No. 19-3 and -4. However, it appears neither of these individuals actually agreed to settle and release their claims. Despite Ninth Circuit precedent granting the Court the power to invalidate the settlements across the board, the Court is unwilling to do so if each putative class member—after having a neutral presentation of the case—decides he or she would have elected to settle anyway.

and coerce Defendant's current and former employees into settling prior to certification, possibly adverse to their interests. The Court will therefore entertain a supplemental motion for sanctions under Rule 11, 28 U.S.C. § 1927, or the Court's inherent power, for the time and energy Plaintiffs' counsel expended to bring this motion and to correct for the errant communications.[3] *See Haffer v. Temple Univ. of Com. Sys. of Higher Educ.*, 115 F.R.D. 506, 513 (E.D. Pa. 1987) (levying sanction against counsel for communicating false and misleading information to class members in the attempt to secure opt-out of class action) (citing *Eash v. Riggins Trucking Co.*, 757 F.2d 557, 565 (3d Cir. 1985) ("[I]ndulgent toleration of lawyers' misconduct is simply a luxury the federal court system can no longer afford."); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986) (levying sanctions under 28 U.S.C. § 1927 where counsel, "by his unauthorized, misleading and inherently coercive communications to class members frustrated the court's purposes."). Plaintiffs' counsel is reminded that a request for fees should be supported by credible evidence, and that the Court bases any award of attorney fees on the prevailing rate for the Eastern District of California. *See Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.*, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) ("A district court is required to determine a reasonable rate for the services provided by examining the prevailing rates in the community, charged by lawyers of reasonably comparable skill, experience, and reputation. When a case is filed in the Fresno Division of the Eastern District of California, the hourly rate is compared against attorneys practicing in the Fresno Division of the Eastern District of California.").

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Invalidate the Settlement Agreements, Send Curative Notice to Class Members, and Bar Communications (Doc. No. 19) is GRANTED in part and DENIED in part;

2. The parties are to meet and confer on language for a reformed notice to putative class members, as well as language notifying any settling parties of their right to void the

---

[3] To accommodate the approaching holiday season, the Court will set the due date for Defendant's initial brief in early 2019.

settlement agreement and release, and submit proposed language on each notice to the Court within twenty-four days of service of this order;

3. Defendant is ordered to SHOW CAUSE why sanctions should not be issued, as discussed above, on the following briefing schedule:

    a. Within 24 days of service of this order, Defendant shall serve its brief to the Court;

    b. Plaintiffs are granted ten days thereafter to respond;

    c. Defendants may issue a reply within seven days after any response from Plaintiffs; and

4. The remainder of this case, including Plaintiffs' motion to amend the complaint, is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   December 18, 2018                                   
                                                SENIOR DISTRICT JUDGE