1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF CALIFORNIA**

7

8   RICK KUTZMAN, JAMIE LEONARDO,           CASE NO. 1:18-cv-00755-AWI-JLT
    JOSEPH POMILLA, ROSEANN
9   OLIVETO, CHARLES MADDEN and
    MARIA IBARRA, individuals, on behalf    **ORDER:**
10  of themselves, and on behalf of all persons
    similarly situated,                     **(1)   GRANTING PRELIMINARY
11                                                   APPROVAL OF SETTLEMENT;**
                   Plaintiffs,
12                                           **(2)   APPROVING CLASS NOTICE;**
    vs.
13                                           **(3)   APPOINTING SETTLEMENT
    DERREL'S MINI STORAGE, INC., a                  ADMINISTRATOR; AND,**
14  California Corporation,
                                             **(4)   SCHEDULING FINAL APPROVAL
15                 Defendant.                        HEARING**

16                                           (Doc. No. 34)

17

18

19

20                           __INTRODUCTION__

21      Plaintiffs Rick Kutzman, Jamie Leonardo, Joseph Pomilla, Roseann Oliveto, Charles

22  Madden and Maria Ibarra ("Plaintiffs"), on behalf of themselves and others similarly situated,

23  bring this putative class action against Defendant Derrel's Mini Storage, Inc. ("Defendant"),

24  alleging various employment-related claims involving background checks, overtime pay, breaks

25  and such under the Fair Credit Reporting Act ("FCRA"), California Labor Code, California

26  Business and Professions Code, and Industrial Welfare Commission ("IWC") Wage Orders. The

27  parties reached a settlement prior to class certification. Plaintiffs now move for conditional

28  certification of two proposed classes under Rule 23 and preliminary approval of the class action

settlement. Doc. No. 34. Defendant does not oppose the motion.

For the reasons set forth below, Plaintiffs' motion will be granted.

## **BACKGROUND**

### I.    <u>Claims and Allegations in Operative Pleading</u>

Defendant is a California corporation with operations in California and, apparently, elsewhere. Doc. No. 29 ¶ 1. This action has to do with Defendant's practices nationwide with respect to background checks, and its employment practices in the state of California as to overtime pay, breaks, business expenses and such.

As to background checks, the Second Amended Complaint ("2AC") (the operative pleading in this action) alleges that Defendant improperly included a "liability release provision in the background check disclosure and authorization document" used in screening job applicants, and thus "obtained consumer reports" regarding employees (and prospective employees) "without proper authorization." Doc. No. 29 ¶¶ 14-15.

As to employment practices in California, the 2AC alleges that Defendant had a "uniform policy and practice which failed to lawfully compensate [] employees for all wages due to them, including overtime wages" and payment for "missed meal and rest periods." Doc. No. 29 ¶ 11. Specifically, Plaintiffs contend that Defendant "failed to include incentive compensation [in] employees' 'regular rate of pay' for purposes of calculating overtime pay," <u>id.</u> ¶ 17, and failed to make additional payments to employees for meal and rest breaks that employees "were periodically denied" due to "workload" and "time constraints" imposed by Defendant. <u>Id.</u> ¶¶ 18-19.

Further, the 2AC alleges that Defendant "systematically failed" to reimburse employees in California "for required business expenses," including expenses relating to the use of personal cellular phones for work, Doc. No. 29 ¶¶ 26, 27, and that Defendant failed to furnish employees with "complete and accurate wage statements" showing, for example, "all applicable hourly rates in effect during [a] pay period" and the "amount of time worked at each hourly rate." <u>Id.</u> ¶ 28.

This case was filed in Kern County Superior Court on May 7, 2018 and removed to this Court on June 1, 2018. Doc. No. 2. Plaintiffs claim to have been subjected to the various types of

wrongdoing described above and purport to litigate this action on behalf of themselves and two putative classes: (i) the so-called "FCRA Class," which is defined in the 2AC as all employees or prospective employees of Defendant in the United States who executed Defendant's standard background check disclosure and authorization document in the period beginning five years prior to the commencement of this action, Doc. No. 29 ¶ 30; and (ii) the so-called "California Class," which is defined in the 2AC as all individuals employed by Defendant as non-exempt employees in California at any time during the period beginning four years prior to the commencement of this action. Id. ¶ 40.

Claims pertaining to the FCRA Class are brought under the FCRA for "including a liability release clause in [Defendant's] background check disclosure and authorization document" in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), Doc. No. 29 ¶¶ 59-64, and for "procuring consumer reports" relating to Plaintiffs and putative members of the FCRA Class "without proper authorization" in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii). Id. ¶¶ 65-70.

As to the California Class, the 2AC alleges claims under the California Business and Profession Code, the California Labor Code and IWC Wage Orders, for failure to calculate overtime correctly, failure to provide premiums for missed meal and rest breaks, failure to provide reimbursement for work-related expenses, failure to provide accurate wage statements, and failure to pay wages when due. Doc. No. 29 at pp. 31-43.

The 2AC also includes individual claims for wrongful termination and retaliation pertaining to two of the Plaintiffs, Doc. No. 29 at pp. 44-46, as well as a claim seeking civil penalties for violation of California's Private Attorneys General Act ("PAGA"). Doc. Id. at pp. 46-48.

## II.     Proposed Settlement

Plaintiffs seek preliminary approval of the proposed settlement, as set forth in the Class Action Settlement Agreement ("Settlement Agreement"), Doc. No. 34-2, p. 20 of 106, as well as conditional certification of the FCRA Class and the California Class (together, the "Class") for settlement purposes. Doc. No. 34-1, Parts V & VI.

**A. Classes**

The FCRA Class is defined in the Settlement Agreement as "all employees or prospective employees of Defendant in the United States regarding whom Defendant procured a background check from May 7, 2016 to December 13, 2018 []."[1] Doc. No. 34-2, p. 20 of 106 (Settlement Agreement § I(B)). The California Class is defined as "all individuals who are or previously were employed by Defendant [] in California and classified as non-exempt employees at any time between May 7, 2014 to December 13, 2018[]." Id. Defendant estimates that there are 97 FCRA Class Members and 518 California Class Members who collectively worked 77,088 workweeks between May 7, 2014 and December 13, 2018. Id., p. 29 of 106 (Settlement Agreement § III.C.6.).

**B. Terms of Settlement Agreement**

Under the proposed Settlement Agreement, Defendant will pay a "Gross Settlement Amount" of $1,450,000, including $245,165.17 that Defendant has already paid to certain employees (referred to as "Settled Class Members") pursuant to other settlements relating to allegations in this action. Doc. No. 34-2, p. 26 of 106 (Settlement Agreement § III.A.).

The "Net Settlement Amount" will be calculated by deducting for the Gross Settlement Amount Court-approved payments for class counsel fees, class counsel litigation expenses, service payments for class representatives, the California Labor and Workforce Development Agency's ("LWDA") share of any Court-approved award under the PAGA, any applicable payroll taxes, and approved costs for settlement administration. Doc. No. 34-2, p. 26 of 106 (Settlement Agreement § III.B.). The Settlement Agreement provides that the payment for class counsel fees will not exceed $362,500 (25% of the Gross Settlement Amount) and that the payment for litigation expenses will not exceed $15,000. Id. (Settlement Agreement § III.B.2.). Settlement administration costs, similarly, are capped at $25,000, id., p. 27 of 106 (Settlement Agreement § III.B.4.), and the class representative service payment is capped at $7,500 for each of the Plaintiffs (for a maximum, it appears, of $45,000 across all six Plaintiffs). Id., p. 26 of 106 (Settlement

---

[1] The December 13, 2018 end date for the periods of time used in defining the FCRA Class and the California Class in the Settlement Agreement appears to be the date of the "all-day mediation" in which the parties agreed to settle this action. See Doc. No. 34-1 at 5:15-21. The end date used in the class definitions in the 2AC was the filing date of this action. The Court notes that distinction for the sake clarity, but it is irrelevant to the disposition of this motion.

Agreement § III.B.1.). Also, the Settlement Agreement calls for seeking a "PAGA Payment" of $25,000, of which $18,750 would be allocated to the LWDA (leaving $6,250 for distribution to class members).[2] Id., p. 27 of 106 (Settlement Agreement § III.B.3.).

Next, $100 would be paid to each participating member of the FCRA Class. Doc. No. 34-2, p. 28 of 106 (Settlement Agreement § III.C.1.). There appear to be 97 members in the FCRA Class, so assuming full participation, the total payment from the Net Settlement Amount to the FCRA Class would be $9,700. Id., p. 7 of 106, ¶ 15.

As to the California Class, the Net Settlement Amount less the aforementioned payments of up to $9,700 to the FCRA Class would be divided by the total number of workweeks worked between May 7, 2014 to December 13, 2018 by all members of the California Class who elect to participate in the settlement to come up with a dollar amount per workweek ("Workweek Payment"). Doc. No. 34-2, p. 28 of 106 (Settlement Agreement § III.C.2.). The payment for a given member of the California Class would be calculated by multiplying the Workweek Payment by the number of weeks the class member in question worked between May 7, 2014 and December 13, 2018. Id., p. 28 of 106 (Settlement Agreement § III.C.2.). That amount would then be reduced by any settlement payment already made to that class member by Defendant, subject to a guarantee that every member of the California Class is entitled to receive at least $200 from this settlement. Id., p. 28 of 106 (Settlement Agreement §§ III.C.2.-3.).

No Class member will be required to return any funds received from the prior settlement payment, Doc. No. 34-2, p. 26 of 106 (Settlement Agreement § III.A.), and funds from uncashed checks will be paid to Valley Children's Hospital. Doc. No. 34-2, p. 19 of 106 (Settlement Agreement § III.E.13.), with no reversion to Defendant. Id., p. 20 of 106 (Settlement Agreement § III.A.).

**C. Notice**

The Settlement Agreement provides that, following preliminary approval of the settlement by the Court, each Class member will be provided with a packet that includes notice of the action,

---

[2] Settlement payments for individual claims as to termination and retaliation would be made separately and in addition to the Gross Settlement Amount and thus do not bear on this motion. See Doc. No. 34-2, Part III.B.

the terms of the proposed settlement and the hearing date for final approval of the settlement, as well as individualized data (such as workweeks worked) relating to his or her prospective recovery under the settlement. Doc. No. 34-2, p. 32 of 106 (Settlement Agreement § III.E.2.). Further, each member of the Class will be provided several weeks to object to or opt out of the Settlement. Id., p. 33 of 106 (Settlement Agreement § III.E.3.). Settlement payments will be mailed to participating Class members as checks, without the need to submit a claim form. Id., p. 22 of 106 (Settlement Agreement § I.Q.) & p. 38 of 106 (Settlement Agreement § III.E.10.).

### D. Released Claims

Class members who do not opt-out of the settlement will be "deemed to have fully and finally released all claims that were set forth, or could have been set forth based on the facts alleged, in the Second Amended Complaint." Doc. No. 34-2, p. 39 of 106 (Settlement Agreement § III.F.1.). The proposed Settlement Agreement also includes a waiver of rights as to unknown claims under Section 1542 of the California Civil Code. Id., p. 40 of 106 (Settlement Agreement § III.F.3.).

### E. Discovery, Mediation and Class Representation

The parties engaged in an exchange of information and documents following the report and scheduling conference required under Rule 26 of the Federal Rules of Civil Procedure. Doc. No. 34-2, p. 5 of 106, ¶ 9. Class counsel states that "Plaintiffs and Defendant have engaged in substantial investigation in connection with the [action], including the detailed investigation and the exchange of information regarding the number of possible class members, Defendant's payroll information [], and other relevant issues." Id., p. 5 of 106, ¶ 10. Class counsel further states that it has "thoroughly analyzed" the value of the claims in this action, through, *inter alia*, meetings with Plaintiffs, the inspection and analysis of records furnished by the parties, legal analysis, and engagement of a damages expert. Doc. No. 34-2, p. 4 of 106, ¶ 10 & p. 9 of 106, ¶ 20.

On December 13, 2018, the parties participated in an all-day mediation with an experienced employment mediator and agreed to settle this action pursuant to terms set forth in a proposal made by the mediator. Doc. No. 34-2, p. 6 of 106, ¶ 12. On December 19, 2018, the Parties notified the Court of the settlement, Doc. No. 25, and on January 10, 2019, the Plaintiffs

filed the 2AC, which remains the operative pleading in this action. Doc. No. 29.

Class counsel has experience in settlements involving similar claims against other employers and is "of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate in light of all known facts and circumstances …." Doc. No. 34-2, p. 8 of 106, ¶ 18. With the assistance of a damages expert, Class counsel estimates total estimated damages for the California Class of $4,764,841 (including recovery on claims relating to overtime, meal breaks, rest breaks and unreimbursed expenses). Id., p. 9 of 106, ¶ 20. As to the FCRA Class, the FCRA provides for statutory damages of $100 to $1,000 per willful violation. Id., p. 10 of 106, ¶ 20.

**F. Defendant's Position**

Defendant does not admit any liability, denies any and all allegations of wrongdoing relating to this action and has asserted numerous affirmative defenses. Doc. No. 34-2, p. 6 of 106, ¶ 11; Doc. No. 16 at 15-16. Defendant contends, for example, that employees were able to take breaks because they worked in pairs, that use of cellphones was voluntary (and, therefore, not subject to reimbursement), that prior settlement bars some claims, and that Plaintiff's FCRA claim is not viable under *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47 (2007). Id., p. 11 of 106, ¶ 21. Defendant also contests class certification and the prosecution of this case as a class action. Id., p. 6 of 106, ¶ 11.

**<u>DISCUSSION</u>**

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [i] the propriety of the certification and [ii] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). "This independent judicial review protects the due process rights of absent class members who have not yet appeared" especially where, as here, "the settlement agreement is negotiated in their absence." Acosta v. Evergreen Moneysource Mortgage Company, 2018 WL 3831004, at *2 (E.D. Cal. Aug. 13, 2018) (citing In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011)).

**I.     Certification of the Class for Purposes of Settlement**

Before certifying a class, the Court must determine whether that class meets the requirements set forth in Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 23(e)(2). Courts must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997); Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently a court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. Berry v. Baca, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005).

The Court will first determine whether subsection (a) of Rule 23 is satisfied and then turn to the certification requirements in Rule 23(b)(3). If subsections (a) and (b) of Rule 23 are both satisfied, the Court will look at whether the settlement is "fair, reasonable and adequate." Fed.R.Civ.P. 23(e)(1)(C).

**A.  Rule 23(a) Class Certification Requirements**

The following four criteria "must be met to certify a class action: (1) numerosity; (2) commonality of law or fact; (3) typicality of the representative plaintiff's claims; and (4) adequacy of representation." Gripenstraw v. Blazin' Wings, Inc., 2013 WL 6798926, at *3 (E.D. Cal. Dec. 20, 2013); Fed.R.Civ.P. 23(a). A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982). The burden is on the party seeking class certification to show that these elements have been met. Doninger v. Pac. N.W. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).

*1. Numerosity*

To satisfy the numerosity requirement in Rule 23(a), a class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). This requirement "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." In re Itel Sec. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Harris v. Palm

Springs Alpine Estates, Inc., 329 F.2d 909, 913-914 (9th Cir. 1964)). There is no specific numerical threshold; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. E.E.O.C., 446 U.S. 318, 330 (1980). Generally, forty or more members will satisfy the numerosity requirement. Collins v. Cargill Mean Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011); Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Defendant estimates that there are 97 FCRA Class Members and 518 California Class Members. Doc. No. 34-2, p. 29 of 106 (Settlement Agreement § III.C.6.). Joinder of all of the putative class members would be impracticable in both cases. Numerosity is therefore satisfied as to the FCRA Class and as to the California Class.

### 2. Commonality

Questions of law or fact must be "common to the class." Fed.R.Civ.P. 23(a)(2). This does not mean all questions of fact and law need be common. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, a plaintiff need only demonstrate "the class members have suffered the same injury ...." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-350 (2011). "Their claims must depend upon a common contention" that, when determined, would resolve an issue "central to the validity of each one of the claims in one stroke." Id. at 350. In an employment context, this inquiry is satisfied when the entire class was injured by the same system-wide policy or practice. See Goodwin v. Winn Management Group LLC, 2017 WL 3173006, at * 5 (E.D. Cal. July 26, 2017) (citation omitted); Arredondo v. Delano Farms Co., 301 F.R.D. 493, 513 (E.D. Cal. 2014); Vedachalam v. Tata Consultancy Servs., Ltd., 2012 WL 1110004, at *12–*13, (N.D. Cal. April 2, 2012); In re Taco Bell Wage & Hour Actions, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012).

As to the FCRA Class, Plaintiffs allege that, pursuant to "corporate policy, practice and procedure," Defendant's "standard FCRA disclosure and authorization document" – which members of the FCRA Class were "required to execute as a condition of employment" with Defendant – improperly contained a "liability release clause," Doc. No. 29 ¶¶ 30-31 & 60-62, and that, due to this defect, background checks involving members of the FCRA Class were not properly authorized. Id. ¶¶ 66-67. This raises common questions of fact as to, *inter alia*, the

contents of the document at issue and the manner in which said document was used, as well as common questions of law as to whether the document and/or background checks based on the document violated the FCRA. Commonality is therefore satisfied as to the FCRA Class.

The California Class is comprised solely of persons employed by Defendant as non-exempt employees in California during a certain period of time. Plaintiffs contend that there was "systematic underpayment of overtime compensation" to members of the California Class as a result of a "uniform policy and practice" on the part of Defendant. Doc. No. 29 ¶¶ 11, 16-17. Similarly, Plaintiffs contend that members of the California Class missed "meal and rest periods because of the workload and time constraints imposed upon them by [Defendant]" and that, in accordance with "strict corporate policy and practice," members of the California Class were not compensated for missing such breaks in the manner required under California law. Doc. No. 29 ¶¶ 18-19. Plaintiffs further contend that, "as a matter of corporate policy, practice and procedure," Defendant failed to reimburse and indemnify members of the California Class for required business expenses. Id. ¶ 26. And Plaintiffs contend that pay statements provided to members of the California Class omitted required information as to pay rates and hours worked. Id. ¶ 28. These contentions raise common questions of fact as to Defendant's policies and practices with respect to overtime, breaks, expenses and pay statements, as well as questions as to whether such policies and practices violated California law. Commonality is therefore satisfied as to the California Class.

*3. Typicality*

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. Falcon, 457 U.S. at 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157, n.13.

There are six named Plaintiffs in this putative class action. Four of the six expressly allege that they completed the "background investigation disclosure document" at issue in the FCRA claims when applying for employment with Defendant, and four of the six Plaintiffs expressly allege that they worked for Defendant in California in a non-exempt capacity and that they were unlawfully deprived compensation for overtime and breaks at some point in the period of time relevant to this action. Doc. No. 29 ¶¶ 2-7. Plaintiffs' claims are thus "reasonably co-extensive" with those of absent potential members of the FCRA Class and "reasonably co-extensive" with those of absent potential members of the California Class. The typicality requirement is therefore satisfied as to both classes.

### 4. Adequacy

The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." See Fed.R.Civ.P. 23(a)(4). Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the potential class members and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class as a whole. See Hanlon, 150 F.3d at 1020.

Plaintiffs do not appear to have any conflicts of interest with putative members of either the FCRA Class or the California Class, and have apparently participated actively in the preparation and prosecution of this case. Doc. No. 34-2, p. 13 of 106, ¶ 25.d. Similarly, Mr. Blumenthal, Mr. Nordrehaug and their firm, Blumenthal Nordrehaug Bhowik De Blouw LLP, have no apparent conflicts with either the FCRA Class or the California Class and have been involved as class counsel in "hundreds of wage and hour class action matters." Id., p. 15 of 106, ¶ 26. The named Plaintiffs and class counsel are adequate representatives of the class.

**B. Rule 23(b) Class Certification Requirements**

In addition to satisfying Rule 23(a), a putative class must fulfill one of the requirements of Rule 23(b) for a court to grant certification. Amchem, 521 U.S. at 614. As to both the FCRA Class and the California Class, Plaintiffs seek certification under Rule 23(b)(3), Doc. No. 34-1, Part VI.F., which requires a showing that: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy. See Amchem, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010).

### 1. Predominance

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 366 (C.D. Cal. 2009) (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 280 F.3d 124, 136 (2nd Cir. 2001)). In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. Id. "[C]ourts' discomfort with individualized liability issues is assuaged in large part where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability." Kurihara v. Best Buy Co., 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007). Where there exist "broad employer policies [which] can impact many workers at once ... a need for class treatment" is often present. Sepulveda v. Wal–Mart Stores, Inc., 237 F.R.D. 229, 247 (C.D. Cal. 2006).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting Erica P. John Fund, Inc., v. Halliburton Co., 563 U.S. 804, 809 (2011)). The requirement is satisfied if a plaintiff establishes that a "common nucleus of facts and potential legal remedies dominates the litigation." Hanlon, 150 F.3d at 1022.

As to the FCRA Class, the predominate question of fact is whether Defendant's background check authorization and disclosure form contained a liability release provision – which implicates a company-wide policy and practice – and the predominate question of law is whether the inclusion of such a provision violated the FCRA. Individualized determinations as to which employees executed such forms are fairly minor by comparison. As to the FCRA claims, in other words, the focus is largely on the conduct on the Defendant and, thus, the predominance

requirement is met as to the FCRA Class.

As to the California Class, there are common questions as to Defendant's policies and practices with respect to overtime pay, breaks, expense reimbursement and wage statements in the state of California, and whether such policies and practices violated California law. Individualized determinations may, of course, be required as to overtime worked, breaks missed and expenses incurred by each member of the California Class for calculating recovery, but it appears that findings as to the nature and legality of Defendant's employment policies and practices in the foregoing areas would have broad applicability to members of the California Class for purposes of determining liability. The predominance requirement is therefore met as to the California Class.

### 2. *Superiority*

Courts are also to consider "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3). Where the parties have agreed to pre-certification settlement (d) and perhaps (c) are irrelevant. Amchem, 521 U.S. at 620; Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010).

The FCRA claims in this case provide for statutory damages in the range of $100 to $1,000, and the proposed settlement provides for a payment of $100 to each participating member of the FCRA Class. Given litigation costs, it is hard to imagine how a member of the FCRA Class could conclude that the mere possibility of recovering an additional $900 justifies prosecuting an individual action under the FCRA. Wolin, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." (citation omitted).) Moreover, the Court is not aware of any pending litigation that would offer a superior method of adjudicating Plaintiffs' FCRA claims. The superiority requirement is therefore satisfied as to adjudication of claims relating to the FCRA Class.

A similar analysis applies to the California Class. With the assistance of a damages expert,

Class counsel estimates the maximum cumulative recovery for the 518 putative members of the California Class to be $4,764,841, for an average of $9,198 per person. Doc. No. 34-2, p. 10 of 106, ¶ 20. Before deductions for attorneys' fees and such, the proposed settlement provides more than 30% of that amount – or about $2,750 per person – on claims relating to the California Class. Id. The difference of about $6,450 does not appear sufficient to justify litigating on an individual basis, particularly given number of claims involved and the uncertainty of the outcome as to each. Moreover, the Court is not aware of any pending litigation that would offer a superior method of adjudicating claims relating to the California Class. The superiority requirement is therefore satisfied as to adjudication of claims relating to the California Class.

### C. Conclusion as to Class Certification

The requirements of numerosity, commonality, typicality, and adequacy have been met for each of the classes at issue here. Further, the Court finds that common questions predominate and that class litigation is the superior method of resolving the claims relating to each class, The Court will, therefore, conditionally certify the both classes for settlement purposes.

Based on the terms of the Settlement Agreement and the foregoing discussion, the Court conditionally certifies the FCRA Class for settlement purposes as all employees or prospective employees of Defendant in the United States regarding whom Defendant procured a background check from May 7, 2016 to December 13, 2018.

The Court conditionally certifies the California Class for settlement purposes as all individuals who are or previously were employed by Defendant in California and classified as non-exempt employees at any time between May 7, 2014 to December 13, 2018.

The Court now turns to the substance of the proposed settlement.

## II.    <u>Fundamental Fairness, Adequacy, and Reasonableness of the Settlement</u>

Class action settlements are permitted "only with the court's approval ... on a finding that [the agreement] is fair, reasonable, and adequate." <u>See</u> Fed.R.Civ.P. 23(e); <u>Hanlon</u>, 150 F.3d at 1026. The principal purpose of court supervision of a class action settlement is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties ...." <u>Id.</u> at 1027. This "ensure[s] that class representatives and their counsel do not secure a

14

disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

Before providing final approval of a settlement, a court is to balance several factors, including: "[i] the strength of the plaintiffs' case; [ii] the risk, expense, complexity, and likely duration of further litigation [and] the risk of maintaining class action status throughout the trial; [iii] the amount offered in settlement; [iv] the extent of discovery completed and the stage of the proceedings; [and] [v] the experience and views of counsel ...." Hanlon, 150 F.3d at 1026.

Less authority exists regarding the standard a court is to use in providing preliminary approval of a settlement. See O'Connor v. Uber Technologies, Inc., 201 F.Supp.3d 1110, 1122 (C.D. Cal. 2016). Some courts save the *Hanlon* factors set forth above for the final-approval stage, focusing at the preliminary stage simply on whether the settlement "falls within the range of possible approval." Id. This includes an examination of whether the settlement is the product of non-collusive negotiations, has no obvious deficiencies, and does not otherwise improperly grant preferential treatment to class representatives or segments of the class. See In re High-Tech Employee Antitrust Litig., 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014). Other courts examine the *Hanlon* factors in addition to conducting a range-of-reasonableness analysis at the preliminary stage, reasoning it is better to closely scrutinize the settlement terms at the earliest opportunity so that if a fatal flaw exists, it can be addressed before the parties "waste a great deal of time and money in the notice and opt-out process." Millan v. Cascade Water Services, Inc., 310 F.R.D. 593 (E.D. Cal. 2015). The Court agrees with the latter approach, and thus applies both the *Hanlon* factors and the range-of-reasonableness analysis here.

**A. Strength of Plaintiffs' Case**

The court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). That in mind, the court need "not reach 'any conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.' " Brewer v. Salyer, 2017 WL 2813178, at *3 (E.D. Cal. June 29, 2017).

Here, Defendants deny all allegations of wrongdoing and allege numerous affirmative defenses relating not only to Plaintiffs' claims, but also to class certification and standing. Further, Defendant asserts facts that could negate essential elements of Plaintiffs' claims. Defendant contends, for example, that its non-exempt employees were able to take meal and rest breaks because they worked in pairs and that the use of personal cell phones by non-exempt employees in connection with work was voluntary and thus not a necessary expense that required reimbursement. Doc. No. 34-2, p. 11 of 106, ¶ 21. In addition, Defendant has already obtained releases from some putative class members in connection with claims at issue in this litigation, id., and it appears that, for some members of the California Class, recovery could be limited by the statute of limitations applicable to claims under the Labor Code. Doc. No. 29 (compare Third Cause of Action to Fourth through Ninth Causes of Action). Moreover, Defendants contend that the FCRA claims at issue here are barred entirely by *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) (in addition to denying that consent to background checks was invalid), and there could be significant problems of proof regarding the extent to which members of the California Class missed breaks or incurred compensable expenses relating to their employ with Defendant. Plaintiffs' willingness to settle this action at a discount to the maximum estimated recovery does not appear suspect – or improvident – in light of such considerations.

**B. The Risk, Expense, Complexity and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Throughout Trial**

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.' " Munoz v. Giumarra Vineyards Corp., 2017 WL 2665075, at *9 (E.D. Cal. June 21, 2017); accord In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong policy that favors settlements, particularly where complex class action litigation is concerned."). Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." Aguilar v. Wawona Frozen Foods, 2017 WL 2214936, at *3 (E.D. Cal May 19, 2017).

This action involves two putative classes – the FCRA Class and the California Class – as well as multiple claims under state and federal law, implicating several aspects of Defendant's

operations, including Defendant's background check process for job applicants nationwide over a period of more than two years, and the payment of overtime, the management of meal and rest breaks, the reimbursement of expenses and the preparation of wage statements in California over a period of more than four years. Even assuming Plaintiffs could show that Defendant had unlawful policies and practices in the foregoing areas, Plaintiffs would still have to set forth evidence that Defendant's conduct was willful and individualized proof would likely be required to establish the extent to which a given employee missed breaks, incurred work-related expenses and such. In addition to increasing the complexity, expense and duration of this litigation, the accumulation of such individualized issues would raise a risk of non-certification at some point in these proceedings. There is also risk involved in seeking non-mandatory PAGA penalties, and given the relative infancy of this action, it is unlikely that trial would commence in the near future. Moreover, even assuming Plaintiffs prevail, payment could be further delayed (and expenses could be further increased) by appeal. The potential costs of maintaining this action through trial and appeal merit particular consideration in light of the fact that that maximum estimated damages for the FCRA Class and the California Class combined are less than $5,000,000. Doc. No. 34-2, p. 9 of 106, ¶ 20. The Court therefore finds that the risks, costs and duration of further litigation, as well as the potential risks attendant to a contested class certification, weigh in favor of preliminary approval of the settlement.

### C. The Amount Offered in Settlement

The amount offered in settlement is generally considered to be the most important consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178-79 (9th Cir. 2013)). To determine whether a settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. Litty v. Merrill Lynch & Co., Inc., 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting In re Mego Financial Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)); see also Officers for Justice v. Civil Service Com'n of City and Cty. of S.F., 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se

render the settlement inadequate or unfair."). Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount. See Bravo v. Gale Triangle, Inc., 2017 WL 708766, at *10 (C.D. Cal. Feb. 16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount).

The FCRA provides for statutory damages of $100 to $1,000 for willful violations, and the Settlement Agreement provides for a payment of $100 to each participating member in the FCRA Class. Doc. No. 34-2, p. 7 of 106, ¶ 15. The $100 award contemplated in the Settlement Agreement appears to compare favorably with approved settlements involving FCRA claims.  See, e.g., Pietras v. Sentry Ins. Co., 513 F. Supp. 2d 983, 985 (N.D. Ill 2007) (citing "eighteen cases, which settled for an average of $34.59 per class member"); Bailes v. Lineage Logistics, LLC, 2016 WL 4415356, at *6 (D. Kan. Aug. 19, 2016) (approving an FCRA settlement for $149,205 for a class of 3,430, which correlates to $43.50 per person); see also, Lengel v. HomeAdvisor, Inc., 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (stating that "[a] $100 gross recovery and net recovery of at least $50 per class member is notably higher than other FCRA disclosure settlements that courts have approved" and collecting cases); Serrano v. Sterling Testing Sys., Inc., 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010) (indicating the per-member recovery in a FCRA action can be significantly below the statutory limit of $1,000 considering the attendant risks of litigation).

Assuming maximum deductions for the FCRA Class, attorney fees, costs and such, the amount remaining for the 518 members of the California Class (before payroll taxes and including settlement payments that have already been made) would be $974,050,[3] which represents 20% of the total maximum estimated damages of the California Class of $4,764,841, as calculated by

---

[3] The Court calculates this $974,050 figure as the Gross Settlement Amount of $1,450,000 minus $9,700 (maximum payment to FCRA Class), $362,500 (maximum attorney fees), $15,000 (maximum litigation expenses), $45,000 (maximum class representative compensation (6 x $7,500)), $18,750 (maximum Labor and Workforce Development Agency payment from any PAGA award) and $25,000 (maximum payment to settlement administrator). See Doc. No. 34-2, p. 22 of 106 (Settlement Agreement § I.Q.), p. 26 of 106 (Settlement Agreement § III.B.-C.).

Class counsel and its damages expert.[4] Doc. No. 34-2, p. 10 of 106, ¶ 20. Thus, to oversimplify, instead of rolling the dice on a maximum award of $9,198.53 (before attorney fees and costs), each of member of the California Class (assuming full participation) would collect $1,880.41. While that is clearly a significant discount, it is not excessive, particularly given the costs of litigating this action of this scope to completion in comparison to relatively modest amount of the maximum possible recovery. See Bravo, 2017 WL 708766, at *10; Bellinghausen, 306 F.R.D. at 256. This factor does not weigh against settlement.

### D. The Extent of Discovery Completed

The Court should lean in favor of a settlement where evidence is presented that a considerable amount of discovery has been conducted "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Adoma, 913 F.Supp.2d at 977 (citation omitted).

The parties engaged in an all-day mediation in this action, conducted by a mediator with experience in employment class actions, and agreed to settle this action pursuant to the terms and conditions of a proposal provided by the mediator. Doc. No. 34-2, p. 6 of 106, ¶ 12. Prior to the mediation, Class counsel obtained production of employment, payroll, background check and class member information from Defendant, Doc. No. 34-2, p. 5 of 106, ¶ 10, p. 9 of 106, ¶ 20 & p. 12 of 106, ¶ 23, and engaged a damages expert with experience to employment actions such as the one at bar to assist in the computation of prospective recoveries in connection with Plaintiffs' claims. Doc. No. 34-2, p. 5 of 106, ¶¶ 10, 18. Class counsel also states that it has conducted extensive legal research and analysis in connection with the claims in this action. Doc. No. 34-2, p. 5 of 106, ¶ 10. It therefore appears that, in addition to participating in mediation and settling pursuant to a mediator proposal, the parties have engaged in sufficient discovery to have a full understanding of the legal and factual issues underlying this action. These factors weigh in favor of approving the settlement.

---

[4] The Court notes that these expert opinions as to maximum damages do not appear to be in the record for this action. For the Court to be able to evaluate the soundness of the Plaintiffs' assertions as to maximum damages, Plaintiffs are advised to furnish such materials in connection with their motion for final approval.

**E.  The Experience and Views of Counsel**

Class counsel has significant experience in wage and hour class action litigation, Doc. No. 34-2, p. 15 of 106, ¶ 26, and they are "of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the [Settlement] Agreement is fair, reasonable, and adequate, and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues." Doc. No. 34-2, p. 12 of 106, ¶ 24. Class counsel's recommendation that the settlement be approved is entitled to significant weight and supports approval of the Settlement Agreement. See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (citation and internal quotation marks omitted)).

**F.  Range-of-Reasonableness: Collusion, Deficiencies, Preferential Treatment**

The Court now turns to whether any collusion, deficiencies, or preferential treatment exists. See In re High-Tech Employee Antitrust Litig., 2014 WL 3917126, at *3. The goal is to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819. To that end, the Ninth Circuit in *Bluetooth* identified three "subtle signs that class counsel have allowed pursuit of their own self-interests ... to infect the negotiations:" "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." Allen v. Bedolla, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting Bluetooth, 654 F.3d at 947) (internal quotation marks omitted); see also, Staton, 327 F.3d at 960 (stating the collusion inquiry addresses "overt misconduct by the negotiators" or improper incentives of some class members at the expense of others). However, as recently discussed by the Ninth Circuit: "[f]or all these factors, considerations, 'subtle signs,' and red flags, ... the underlying question remains this: Is the settlement fair?" In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.

Litig., 895 F.3d 597, 611 (9th Cir. 2018).

Here, class counsel seeks attorney fees of up to $362,500 – which would amount to 25% of the gross fund. Doc. No. 34-2, p. 26 of 106 (Settlement Agreement §§ III.A. & III.B.2.). The parties have also agreed to an administrative fee of up to $25,000, as well as a class representative service award of up to $7,500 for each of the six Plaintiffs. Id., p. 26 of 106 (Settlement Agreement §§ III.B.1 & III.B.4.).

The proposed maximum attorney fees are in line with the benchmark for this Circuit, see Bluetooth, 654 F.3d at 947 (referencing a 25% benchmark); Staton, 327 F. 3d at 952 (same); Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (same), Ross v. Bar None Enterprises, Inc., 2014 WL 4109592, at *10 (E.D. Cal. Aug. 19, 2014) (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" (quoting Morales v. Stevco, Inc., 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011)), and the proposed maximum fee for the settlement administrator does not strike the Court as excessive, particularly given the fact that this action involves two classes comprising, in aggregate, several hundred members. See Garcia v. Gordon Trucking, 2012 WL 5364575, at *3 (E.D. Cal. Oct.31, 2012) (approving $25,000 administrator fee awarded in a wage and hour case involving 1,868 potential class members); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 483 (E.D. Cal. 2010) (approving $25,000 administrator fee awarded in wage and hour case involving 177 potential class members). The Court also notes that the Settlement Agreement does not contain a provision for the reversion of funds to Defendant. All of these factors favor approval of the settlement.

The fact that the Agreement includes a "clear sailing" provision, see Doc. No. 34-2, p. 26 of 106 (Settlement Agreement § III.B.2), on the other hand, is not ideal, see Bluetooth, 654 F.3d at 942, 947, and the absolute dollar amount of the proposed attorney fees could be somewhat high for a case of such short duration. The Settlement Agreement, however, merely provides for attorney fees "up to" $362,500, and the Court can scrutinize the final award more closely once the request for attorney fees is actually made.

The fact that that the parties engaged in mediation and that the Settlement is based on a

mediator's proposal. Doc. No. 34-2, p. 6 of 106, ¶ 12, supports a finding that the settlement agreement is not the product of collusion, see Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, at *6 (N.D. Cal. Nov.21, 2012) (finding that reaching a settlement following participation in mediation with "with a private mediator experienced in wage and hour class actions … tends to support the conclusion that the settlement process was not collusive" (citation omitted)), but the Court has some concerns with the potential size of the proposed service awards. It appears that the service award of up to $7,500 for each of the named Plaintiffs could be more than four times the typical recovery of an unnamed plaintiff who is a member of both the FCRA Class and the California Class, see Staton, 327 F.3d 938 at 978 (expressing concerns as to "the very large differential in the amount of damage awards between [] named and unnamed class members" due to proposed service awards), and the Court notes that in aggregate, the proposed service awards could amount to more than 3% of the gross fund in the settlement. See Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462–63 (E.D. Cal. 2013) (finding proposed enhancement award of 1.8% of the total settlement amount inappropriate and awarding a service fee of approximately .62% of the total settlement for the purpose of preliminary approval). Further, the existing record in this action – which has been relatively short-lived – provides little evidence of what Plaintiffs have done to merit an amount so far in excess (at least on a percentage basis) of what unnamed class members stand to receive through settlement.

Given the relatively modest size of the proposed incentive awards in absolute terms, see Staton, 327 F.3d at 976 (noting Ninth Circuit's approval of "incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million"); Hopson v. Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."), and the fact that incentive awards are not uncommon in wage-and-hour actions, see Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."), the Court will not withhold preliminary approval on the basis of the foregoing concerns, particularly since the Settlement Agreement merely provides for a service fee of "up to" $7,500 for each of the named Plaintiffs. Plaintiffs are advised, however, that additional justification for the proposed

service fees will be required before the Court grants final approval. <u>See Staton</u>, 327 F.3d at 977

(setting forth factors relevant to determining whether a service award is merited (quoting <u>Cook v.</u>

<u>Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998) ); <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F.

Supp. 294, 299 (N.D. Cal. 1995) (similar).

### G. Conclusion as to Fairness, Adequacy, and Reasonableness of the Settlement

Subject to the caveats above as to the size of the attorney fees and the service awards, the

Court finds that the Settlement Agreement appears to be the product of arms-length negotiation

and to grant all class members a fair shake. <u>See In re Volkswagen</u>, 895 F.3d at 611. This factor,

therefore, does not weigh against preliminary approval of the settlement.

### III. Notice and Release

### A. Notice Form and Notice Plan

For any class certified under Rule 23(b)(3), "the court must direct to class members the

best notice that is practicable under the circumstances." Fed.R.Civ.P. 23(c)(2)(B), 23(e)(1). The

absent class members must be provided with notice, an opportunity to be heard, and a right to opt-

out of the class. <u>AT & T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 349 (2011). "The notice

must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
> claims, issues, or defenses; (iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the court will exclude from
> the class any member who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a class judgment on members
> under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B). "Adequate notice is critical to court approval of a class action settlement

under Rule 23(c)(2)(B).... [B]oth the content of the notice and the form of the notice must be

adequate and approved by the Court." <u>Monterrubio</u>, 291 F.R.D. at 452 (internal citation omitted).

The proposals as to notice in this action appears to satisfy all of these criteria. The preface

to the notice form, for example, expressly states, in the plainest possible terms, that class members

may object to the settlement, opt out of the settlement, or do nothing and receive payment, and

clearly marked sections of the notice form provide concise, easy-to-understand instructions as to

each course of action. Doc. No. 34-2, p. 53 through 58 of 106. Other parts of the notice, similarly,

provide a thorough explanation of the case, the classes and the proposed settlement, including the claims that a participating class member will release, individualized estimates of each class member's prospective settlement share, and instructions on how to get additional information regarding the case (including, for example, a copy of the Settlement Agreement). Id. Further, the notice plan calls for thorough measures to contact class members, including the use of a qualified settlement administrator in tracking all undelivered mail, performing address searches for all mail returned without a forwarding address, and promptly re-mailing notices to class members for whom new addressed are found. Doc. No. 34-2, p. 29 and p. 32 of 106 (Settlement Agreement §§ III.D. & III.E.2.c.). The proposed notice is adequate.

**B.  Scope of Release**

Class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint. Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010). Class action settlements may, and often do, commonly release concealed or hidden claims related to the facts alleged. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 2017 WL 2212780, at *8 (N.D. Cal. May 17, 2017), aff'd, 746 F. App'x 655 (9th Cir. 2018).

The release in the proposed settlement is permissible. The notice form states, as to both the FCRA Class and the California Class, that class members who elect to remain in the settlement class "shall be deemed to have fully and finally released all claims that were set forth, or could have been set forth based on the facts alleged, in the Second Amended Complaint that occurred during the Class Period," while expressly excluding from the release for each class, "all other claims." Doc. No. 34-2, p. 56 of 106. The release is adequately tailored to release only those claims covered by the lawsuit.

**C.  Notice Schedule**

The Court has reviewed Plaintiffs' proposed notice. The Court agrees that the proposed notice schedule is appropriate. The schedule shall be implemented as set forth in the Settlement Agreement, and the date of entry of this Order shall be deemed **January 24, 2020** for such purposes.

The final approval hearing will be set for **June 22, 2020 at 1:30 p.m**.

**D.  Conclusion Regarding Notice and Release**

The Court finds that the scope of the proposed release is acceptable and that the proposed notice protocols comply with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States.

## **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for conditional class action certification and preliminary approval of class action settlement (Doc. No. 34) is GRANTED;

2. The FCRA Class and the California Class are each conditionally certified for purposes of settlement only;

   a.  The FCRA Class is defined as follows: All employees or prospective employees of Defendant Derrel's Mini Storage, Inc. in the United States regarding whom Defendant procured a background check from May 7, 2016 to December 13, 2018;

   b.  The California Class is defined as follows: All individuals who are or previously were employed by Defendant Derrel's Mini Storage, Inc. in California and classified as non-exempt employees at any time between May 7, 2014 to December 13, 2018;

3. The notice plan set forth in the Settlement Agreement, including the Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval (Exhibit A to the Settlement Agreement, Doc. No. 34-2, p. 53 of 106), is approved;

4. The Parties shall implement the schedule as to notice, briefing and such set forth in the Settlement Agreement and the entry date for this Order shall be deemed January 24, 2020 for such purposes;

5. The Court authorizes the retention of KCC Class Action Services as Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement;

6. Blumenthal Nordrehaug Bhowmik De Blouw LLP is conditionally designated as counsel

for the FCRA Class and for the California Class;

7. Rick Kutzman, Jamie Leonardo, Joseph Pomilla, Roseann Oliveto, Charles Madden and Maria Ibarra are are conditionally designated as the class representatives for the FCRA Class and for the California Class;

8. The parties shall appear on June 22, 2020, 1:30 p.m. in Courtroom 2 of the United States District Court, Eastern District, Fresno Division, before the undersigned for a final settlement approval hearing, which may include consideration of the following:

   a. Timely objections to the proposed settlement by Class members;

   b. Responses by Class counsel and counsel for Defendant to any objections timely filed by Class members;

   c. Responses by either party to provide appropriate information bearing on whether the settlement and settlement administration costs should be approved; and

   d. Responses by Class counsel to any questions regarding its request for fees and costs, as well as responses relating to the application for class representative service payments.

IT IS SO ORDERED.

Dated:   January 24, 2020   _____

SENIOR  DISTRICT  JUDGE