1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICK KUTZMAN, JAMIE LEONARDO, JOSEPH POMILLA, ROSEANN OLIVETO, CHARLES MADDEN and MARIA IBARRA, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DERREL'S MINI STORAGE, INC., a California corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:    1:18-cv-00755-AWI-JLT<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**<br><br>(Doc. Nos. 42 and 43) |

## I.    Introduction

Plaintiffs Rick Kutzman, Jamie Leonardo, Joseph Pomilla, Roseann Oliveto, Charles Madden and Maria Ibarra ("Plaintiffs"), on behalf of themselves and others similarly situated, brought this putative class action against Defendant Derrel's Mini Storage, Inc. ("Defendant"), alleging various employment-related claims involving background checks, overtime pay, breaks and such under the Fair Credit Reporting Act ("FCRA"), California Labor Code, and California Business and Professions Code. See Doc. No. 29. The parties reached class-wide settlement prior to class certification. Doc. No. 32.

Plaintiffs sought and the Court granted conditional class certification under Rule 23 and preliminary approval of the settlement. Doc. Nos. 34, 36 & 39. In the Court's preliminary approval order, it set out a schedule for giving class notice, filing a final approval motion, and

holding a final fairness hearing. Doc. No. 36. Class notice was issued, as ordered, to 530 class members, Doc. No. 44; Plaintiffs filed an unopposed motion for final approval of class settlement, as well as an unopposed motion for attorneys' fees, costs and services awards, Doc. No. 42 & 43; and a final fairness hearing was held on August 10, 2020. Doc. Nos. 47. No class member participated in the final fairness hearing, <u>see</u> Doc. No. 47, and no class member objected to the settlement or filed a notice of exclusion (timely or otherwise). Doc. Nos. 44 & 46. For the reasons set forth below, Plaintiffs' motions will be granted in full.

## II.      Background

**A.      General Background**

Defendant is a California corporation with self-storage operations in California and elsewhere. Doc. No. 29 ¶ 1. This action has to do with Defendant's practices nationwide with respect to background checks, and its employment practices in California as to overtime pay, breaks, business expenses and such. <u>See</u> Doc. No. 29.

As to background checks, Plaintiffs allege that Defendant improperly included a "liability release provision in the background check disclosure and authorization document" used in screening job applicants, and thus "obtained consumer reports" regarding employees (and prospective employees) "without proper authorization." Doc. No. 29 ¶¶ 14-15.

As to employment practices in California, Plaintiffs allege that Defendant had a "uniform policy and practice which failed to lawfully compensate [ ] employees for all wages due to them, including overtime wages" and payment for "missed meal and rest periods." Doc. No. 29 ¶ 11. Specifically, Plaintiffs contend that Defendant "failed to include incentive compensation [in] employees' 'regular rate of pay' for purposes of calculating overtime pay," id. ¶ 17, and failed to make additional payments to employees for meal and rest breaks that employees "were periodically denied" due to "workload" and "time constraints" imposed by Defendant. Id. ¶¶ 18-19.

Further, Plaintiffs allege that Defendant "systematically failed" to reimburse employees in California "for required business expenses," including expenses relating to the use of personal cellular phones for work, Doc. No. 29 ¶¶ 26, 27, and that Defendant failed to furnish employees

with "complete and accurate wage statements" showing, for example, "all applicable hourly rates in effect during [a] pay period" and the "amount of time worked at each hourly rate." Id. ¶ 28.

**B.    Settlement Agreement**

The Court conditionally certified two classes for purposes of settlement only: the Fair Credit Reporting Act ("FCRA") Class and the California Class (together, the "Class"). Doc. No. 36 at 25:11-19. The FCRA Class is defined as: "All employees or prospective employees of Defendant Derrel's Mini Storage, Inc. in the United States regarding whom Defendant procured a background check from May 7, 2016 to December 13, 2018." Id. The California Class is defined as: "All individuals who are or previously were employed by Defendant Derrel's Mini Storage, Inc. in California and classified as non-exempt employees at any time between May 7, 2014 to December 13, 2018." Id.

Claims pertaining to the FCRA Class are brought under the Fair Credit Reporting Act for "including a liability release clause in [Defendant's] background check disclosure and authorization document" in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), Doc. No. 29 ¶¶ 59-64, and for "procuring consumer reports" relating to Plaintiffs and members of the FCRA Class "without proper authorization" in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii). Id. ¶¶ 65-70. Claims pertaining to the California Class are brought under the California Business and Profession Code and the California Labor Code for failure to: (i) calculate overtime correctly; (ii) provide premiums for missed meal and rest breaks; (iii) provide reimbursement for work-related expenses; (iv) provide accurate wage statements; and (v) pay wages when due. Doc. No. 29 at pp. 31-43. Together, the FCRA Class and the California Class comprise 530 individuals. Doc. No. 44 at 1:4-16.

This action also includes individual claims for wrongful termination and retaliation on behalf of two of the Plaintiffs, Kutzman and Leonardo, Doc. No. 29 at 44-46, as well as a claim seeking civil penalties for violation of California's Private Attorneys General Act ("PAGA"). Id. at 46-48.

Under the proposed Settlement Agreement, Defendant will pay a "Gross Settlement Amount" of $1,450,000, including approximately $240,000 that Defendant has already paid to

3

certain employees (referred to as "Settled Class Members") pursuant to other settlements relating to the conduct alleged in this action. Doc. No. 34-2, page 26 of 106 (Settlement Agreement § III.A.).

The "Net Settlement Amount" will be calculated by deducting from the Gross Settlement Amount Court-approved payments for class counsel fees, litigation costs, service awards to the named Plaintiffs, the California Labor and Workforce Development Agency's ("LWDA") share of any Court-approved award under PAGA, any applicable payroll taxes and approved costs for settlement administration, as well as payments to Plaintiffs Kutzman and Leonardo for settlement of their individual claims. Doc. No. 34-2, page 26 of 106 (Settlement Agreement § III.B.). The Settlement Agreement provides that the payment for class counsel fees will not exceed $362,500 (25% of the Gross Settlement Amount) and that the payment for litigation expenses will not exceed $15,000. Id. (Settlement Agreement § III.B.2.). Settlement administration costs, similarly, are capped at $25,000, id., page 27 of 106 (Settlement Agreement § III.B.4.), and the class representative service payment is capped at $7,500 for each of the named plaintiffs (for a maximum of $45,000 across all six Plaintiffs). Id., page 26 of 106 (Settlement Agreement § III.B.1.). The proposed payments to Kutzman and Leonardo for their individual wrongful termination and retaliation claims are $25,000 each, id., page 26 of 106 (Settlement Agreement § III.B.1.), and the proposed "PAGA Payment" is $25,000, of which $18,750 would be allocated to the LWDA (leaving $6,250 for distribution to class members). Id., page 27 of 106 (Settlement Agreement § III.B.3.).

$100 would be paid to each participating member of the FCRA Class in settlement of FCRA claims. Doc. No. 34-2, page 28 of 106 (Settlement Agreement § III.C.1.).

As to the California Class, the Net Settlement Amount less settlement payments to members of the FCRA Class would be divided by the total number of workweeks worked between May 7, 2014 to December 13, 2018 by all members of the California Class who elect to participate in the settlement to come up with a dollar amount per workweek ("Workweek Payment"). Doc. No. 34-2, page 28 of 106 (Settlement Agreement § III.C.2.). The payment for a given member of the California Class would be calculated by multiplying the Workweek Payment by the number of

4

weeks the class member in question worked between May 7, 2014 and December 13, 2018. Id., page 28 of 106 (Settlement Agreement § III.C.2.). That amount would then be reduced by any settlement payment already made to that class member by Defendant, subject to a guarantee that every member of the California Class is entitled to receive at least $200 from this settlement. Id., p. 28 of 106 (Settlement Agreement §§ III.C.2.-3.).

No class member has opted out of or objected to the proposed settlement, Doc. No. 44 at 3:4-10; Doc. No. 46, and preliminary award calculations prepared by the settlement administrator, KCC Class Action Services, LLC ("KCC"), show a maximum award of $2,905.06 and an average award of $1,719.92. Doc. No. 44 at 3:12-25. No Class member will be required to return any funds received from the prior settlement payment, Doc. No. 34-2, page 26 of 106 (Settlement Agreement § III.A.), and funds from uncashed checks will be paid to Valley Children's Hospital. Doc. No. 34-2, page 19 of 106 (Settlement Agreement § III.E.13.), with no reversion to Defendant. Id., page 20 of 106 (Settlement Agreement § III.A.).

**C.    Final Fairness Hearing and Related Filings**

On January 24, 2020, the Court issued a detailed order conditionally certifying the FCRA Class and the California Class for settlement purposes and granting preliminary approval of the proposed settlement, in addition to approving class notice and scheduling a final approval hearing. Doc. Nos. 36 and 39.

On June 29, 2020, Plaintiffs brought an unopposed motion for final approval of class settlement and an unopposed motion for attorneys' fees, costs and service awards. Doc. Nos. 42 & 43. Plaintiffs have also filed declarations stating that notice has been issued as required under the preliminary approval order and that no class members have opted out of or objected to the proposed settlement. Doc. Nos. 44 and 46. A final fairness hearing was held via video conference on August 10, 2020. Doc. No. 47. No class members participated. Id.

### III.    Motion for Final Approval of Class Settlement

**A.    Legal Standard**

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and

internal quotation marks omitted). However, "[t]he claims, issues, or defenses of a certified class may be settled … only with the court's approval," "after a hearing and on a finding that it is fair, reasonable, and adequate." Fed. Civ. P. 23(e). When a settlement is reached by the parties prior to certification of a class, the court must confirm "the propriety of the [class] certification and the fairness of the settlement" to protect the absent class members. Stanton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (When settlements are reached prior to certification "an even higher level of scrutiny" is required to determine the fairness of the agreement.); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (same).

Class settlement under Rule 23 generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement, and approves the notice to be imparted upon the class. Ontiveros v. Zamora, 303 F.R.D. 356, 363 (E.D. Cal. 2014). In the second phase, the court holds a fairness hearing where class members may present objections to class certification or to the fairness of the settlement agreement. Ontiveros, 303 F.R.D. at 363 (citing Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate and the settlement is fair, reasonable, and adequate such that the parties should be allowed to settle the class action pursuant to the terms of the settlement agreement. See Valdez v. Neil Jones Food Co., 2015 WL 6697926, at *4 (E.D. Cal. Nov. 2, 2015); Miller v. CEVA Logistics USA, Inc., 2015 WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

**B.     Discussion**

This Court has conducted a final fairness hearing. No class member was present at the hearing, and no timely objections or requests for exclusion were filed. Despite the absence of objections, the Court has conducted an in-depth review of the Settlement Agreement in this action. For the reasons that follow, Plaintiffs' motion for final settlement approval will be granted.

1.     Rule 23 Class Certification

Class certification involves satisfying two sets of requirements. First, Rule 23(a) requires a

showing of numerosity, commonality of law or fact, typicality of the representative plaintiff's claims, and adequacy of representation. Fed.R.Civ.P. 23(a). Second, the action must fit within one of the "types of actions" set forth by Rule 23(b). Fed.R.Civ.P. 23(b).

In the Court's January 24, 2020 order, it thoroughly considered each of the Rule 23(a) requirements, in addition to finding that this action appropriately constitutes the type of action allowed under Rule 23(b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). Based on the Court's consideration of the Rule 23 requirements at the preliminary approval stage, in combination with the information provided in Plaintiffs' motion for final approval and related declarations, the Court is satisfied that the Rule 23(a) requirements are met, that common issues predominate and that class action is superior to alternative methods of adjudicating the controversy at bar.

          *a.*    *Numerosity*

To satisfy the numerosity requirement in Rule 23(a), a class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). This requirement "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." In re Itel Sec. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-914 (9th Cir. 1964)). There is no specific numerical threshold; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. E.E.O.C., 446 U.S. 318, 330 (1980). Generally, forty or more members will satisfy the numerosity requirement. Collins v. Cargill Mean Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011); Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Here, there are 97 members of the FCRA Class, Doc. No. 43-2, page 3 of 104, line 22, and 530 members of the FCRA Class and the California Class combined. Doc. No. 44 at 2:4-16. The Court therefore finds that numerosity is satisfied.

1            b.      Commonality

2          In its January 24, 2020 order, the Court stated that, in a wage and hour context,

3    commonality is satisfied when all class members are harmed by the same class-wide policy or

4    practice. Doc. No. 36 at 9:17-22 (citing Goodwin v. Winn Management Group LLC, 2017 WL

5    3173006, * 5 (E.D. Cal. July 26, 2017) and other cases).

6          As to the FCRA Class, Plaintiffs allege that, pursuant to "corporate policy, practice and

7    procedure," Defendant's "standard FCRA disclosure and authorization document"—which

8    members of the FCRA Class were "required to execute as a condition of employment" with

9    Defendant—improperly contained a "liability release clause," Doc. No. 29 ¶¶ 30-31 & 60-62, and

10   that, due to this defect, background checks involving members of the FCRA Class were not

11   properly authorized. Id. ¶¶ 66-67. As to the California Class, similarly, Plaintiffs contend that

12   Defendant's policies and practices in the state of California resulted in a "systematic

13   underpayment of overtime compensation," missed breaks, a lack of reimbursement for business

14   expenses and noncompliant pay statements. Doc. No. 29 ¶¶ 11, 16-19, 26 & 28.

15         The Court found it its January 24, 2020 order that these contentions raise common

16   questions of fact as to Defendant's policies and practices with respect to background checks,

17   overtime, breaks, expenses and pay statements, as well as questions as to whether such policies

18   and practices violated applicable law. Doc. No. 36, Discussion, Part I.A.2. The Court reaffirms

19   that finding here. Commonality is satisfied.

20            c.      Typicality

21         The typicality requirement is satisfied if "the claims or defenses of the representative

22   parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality

23   requires that a class representative "possess the same interest and suffer the same injury" as the

24   putative class. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). Representative claims

25   need only be "reasonably co-extensive with those of absent class members; they need not be

26   substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). The

27   typicality requirement ensures that "the named plaintiff's claim and the class claims are so

28   interrelated that the interests of the class members will be fairly and adequately protected in their

1  absence." Falcon, 457 U.S. at 157, n.13.

2       There are six named Plaintiffs in this putative class action. Four of the six expressly allege

3  that they completed the "background investigation disclosure document" at issue in the FCRA

4  claims when applying for employment with Defendant, and four of the six Plaintiffs expressly

5  allege that they worked for Defendant in California in a non-exempt capacity and that they were

6  unlawfully deprived compensation for overtime and breaks at some point in the period of time

7  relevant to this action. Doc. No. 29 ¶¶ 2-7.

8       Plaintiffs' claims are thus "reasonably co-extensive" with those of absent members of the

9  FCRA Class and with those of absent members of the California Class. Typicality is satisfied as to

10  both classes.

11           *d.*    *Adequacy*

12       The requirement of adequate representation asks whether the representative "will fairly and

13  adequately protect the interests of the class." See Fed.R.Civ.P. 23(a)(4). Courts are to inquire (1)

14  whether the named plaintiffs and counsel have any conflicts of interest with the rest of the

15  potential class members and (2) whether the named plaintiff and counsel will prosecute the action

16  vigorously for the class as a whole. See Hanlon, 150 F.3d at 1020.

17       Plaintiffs do not appear to have any conflicts of interest with putative members of either

18  the FCRA Class or the California Class, and have apparently participated actively in the

19  preparation and prosecution of this case. Doc. No. 34-2, page 13 of 106 ¶ 25.d.; see also, Doc.

20  Nos. 42-3 through 42-8. Similarly, class counsel have no apparent conflicts with either the FCRA

21  Class or the California Class and have been involved as class counsel in "hundreds of wage and

22  hour class action matters." Id., page 15 of 106 ¶ 26. The named Plaintiffs and class counsel are

23  adequate representatives of the class.

24       For the foregoing reasons, the Court finds that all Rule 23(a) requirements are satisfied.

25           *e.*    *Predominance and Superiority*

26       This matter was conditionally certified at the preliminary approval phase under Rule

27  23(b)(3). Doc. No. 36. In order for a plaintiff to maintain a class action under Rule 23(b)(3), the

28  Court must find (1) that the common questions of law or fact predominate over issues affecting

only individual members and (2) that a class action is the superior vehicle for litigating the claims at issue. Fed.R.Civ.P. 23(b)(3). The Court made such findings in its January 24, 2020 order, Doc. No. 36, Part I.B, and sees no reasons to disturb those determinations here.

Thus, the FCRA Class is certified as:

All employees or prospective employees of Defendant Derrel's Mini Storage, Inc. in the United States regarding whom Defendant procured a background check from May 7, 2016 to December 13, 2018;

And the California Class is certified as:

All individuals who are or previously were employed by Defendant Derrel's Mini Storage, Inc. in California and classified as non-exempt employees at any time between May 7, 2014 to December 13, 2018.

See Doc. No. 36 at 25.

2.      Sufficiency of Notice

Before a proposed settlement is approved, Rule 23(c)(2)(B) and (e)(1)(B) require the Court to ensure that notice is directed "in a reasonable manner to all class members who would be bound by the" proposed settlement and that such notice provides the information necessary to make an informed decision regarding participation in the action. See AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 349 (2011). The Court previously approved the substance of the notice packet, finding that it informed class members of the following "in plain, easily understood language": "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." See Doc. 36, Discussion, Part III.A. (citing Fed.R.Civ.P. 23(c)(2)(B)).

In addition to the sufficiency of the content of the notice given, the process for giving notice was also deemed adequate. For example, the notice plan called for thorough measures to contact class members, including the use of a qualified settlement administrator in tracking all undelivered mail, performing address searches for all mail returned without a forwarding address,

and promptly re-mailing notices to class members for whom new addresses were found. Doc. No. 36 at 24:4-9.  The settlement administrator mailed notices to all 530 members of the FCRA Class and the California Class. Doc. No. 44 at 2:13-22. Of 40 notices initially returned as undeliverable, 22 notices were mailed to updated addresses found through credit bureau and other public source databases. Id. Ultimately, at least 96.6% of class members were contacted via mail. Id. Further, a toll-free hotline was established to field inquiries regarding the settlement. Id. at 2:25-3:2.

The Court is satisfied that the notice given was substantively sufficient and sent in a manner calculated to impart notice.

### 3.   Rule 23(e) Factors

In order for this settlement to be approved, Plaintiff must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. Hanlon, 150 F.3d at 1026 (citation omitted); see Fed.R.Civ.P. 23(e). In conducting a fairness determination pursuant to Rule 23(e), the Court considers: "(1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." In re Online DVD–Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015) (quoting, *inter alia*, Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). When settlement occurs before class certification the court must take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth, 654 F.3d at 947.

The Court conducted all aspects of this analysis prior to granting preliminary approval of the settlement and reaffirms its reasoning and relevant findings here, as follows.

### a.   *Strength of Plaintiffs' Case*

A court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (citation omitted). That in mind, the court need "not reach 'any conclusions regarding the contested issues of fact and

1  law that underlie the merits of th[e] litigation.' " <u>Brewer v. Salyer</u>, 2017 WL 2813178, at *3 (E.D.

2  Cal. June 29, 2017).

3        Here, Defendant denies all allegations of wrongdoing and alleges numerous affirmative

4  defenses relating not only to Plaintiffs' claims, but also to class certification and standing. Further,

5  Defendant asserts facts that could negate essential elements of Plaintiffs' claims. Defendant

6  contends, for example, that its non-exempt employees were able to take meal and rest breaks

7  because they worked in pairs and that the use of personal cell phones by non-exempt employees in

8  connection with work was voluntary and thus not a necessary expense that required

9  reimbursement. Doc. No. 34-2, page 11 of 106 ¶ 21. In addition, Defendant has already obtained

10  releases from some putative class members in connection with claims at issue in this litigation, <u>id.</u>,

11  and it appears that, for some members of the California Class, recovery could be limited by the

12  statute of limitations applicable to claims under the Labor Code. <u>See</u> Doc. No. 29 (compare Third

13  Cause of Action to Fourth through Ninth Causes of Action). Moreover, Defendants contend that

14  the FCRA claims at issue here are barred entirely by *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47

15  (2007) (in addition to denying that consent to background checks was invalid), and there could be

16  significant problems of proof regarding the extent to which members of the California Class

17  missed breaks or incurred compensable expenses relating to their employment with Defendant. As

18  the Court found in its January 24, 2020 order, Plaintiffs' willingness to settle this action does not

19  appear suspect—or improvident—in light of such considerations.

20        Further, the parties have probed the strengths and weaknesses of Plaintiffs' case through a

21  substantial amount of relevant discovery, Doc. No. 34-2, page 5 of 106 ¶ 10, page 9 of 106 ¶ 20 &

22  page 12 of 106 ¶ 23; expert damages analysis, <u>id.</u>, page 5 of 106 ¶¶ 10, 18; and an all-day

23  mediation, using the mediator's proposal as the basis for the settlement agreement at issue here.

24  <u>Id.</u>, page 6 of 106 ¶ 12.

25     Settlement is a reasonable course of action under the circumstances.

26          b.    *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

27             *and the Risk of Maintaining Class Status*

28       "Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain

1   results.' " Munoz v. Giumarra Vineyards Corp., 2017 WL 2665075, at *9 (E.D. Cal. June 21,

2   2017) (citation omitted); accord In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008)

3   ("[T]here is a strong policy that favors settlements, particularly where complex class action

4   litigation is concerned."). Moreover, "[e]mployment law class actions are, by their nature, time-

5   consuming and expensive to litigate." Aguilar v. Wawona Frozen Foods, 2017 WL 2214936, at *3

6   (E.D. Cal. May 19, 2017) (citation omitted).

7        This action involves two putative classes, as well as multiple claims under state and federal

8   law, implicating several aspects of Defendant's operations, including Defendant's background

9   check process for job applicants nationwide over a period of more than two years, and the

10  payment of overtime, the management of meal and rest breaks, the reimbursement of expenses and

11  the preparation of wage statements in California over a period of more than four years. Even

12  assuming Plaintiffs can show Defendant had unlawful policies and practices in the foregoing

13  areas, evidence that Defendant's conduct was willful may be required and individualized proof

14  would likely be required to establish the extent to which a given employee missed breaks, incurred

15  work-related expenses and such. In addition to increasing the complexity, expense and duration of

16  this litigation, the accumulation of such individualized issues would raise a risk of non-

17  certification at some point in these proceedings. There is also risk involved in seeking non-

18  mandatory PAGA penalties, and it is unlikely, for a variety of reasons relating to the posture of

19  this case and exogenous factors, that trial in this matter would commence in the near future.

20  Moreover, even assuming Plaintiffs prevail, payment could be further delayed (and expenses could

21  be further increased) by appeal. The potential costs of maintaining this action through trial and

22  appeal merit particular consideration in light of the fact that that maximum estimated damages for

23  the FCRA Class and the California Class combined are less than $5,000,000. Doc. No. 34-2, page

24  9 of 106 ¶ 20.

25       The Court therefore finds that the risks, costs and duration of further litigation, as well as

26  the potential risks attendant to contested class certification, weigh in favor of settlement approval.

27            c.   *Amount Offered in Settlement*

28       The amount offered in settlement is generally considered to be the most important

consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, inter alia, In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013). To determine whether a settlement amount is reasonable, a court consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. Litty v. Merrill Lynch & Co., Inc., 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (citation omitted). Courts regularly approve class settlements where class members recover a mere fraction of the maximum potential recovery. See Bravo v. Gale Triangle, Inc., 2017 WL 708766, at *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); Officers for Justice v. Civil Service Com'n of City and Cty. of S.F., 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); see also, In re Mego, 213 F.3d at 459 (approving a settlement amount that was approximately one-sixth of the maximum possible recovery); In re Celera Corp. Sec. Litig., 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving settlement that was approximately thirteen percent of maximum recovery).

The FCRA provides for statutory damages of $100 to $1,000 for willful violations, and the settlement provides for a payment of $100 to each participating member in the FCRA Class. Doc. No. 34-2, page 7 of 106 ¶ 15. The $100 award contemplated in the Settlement Agreement appears to compare favorably with approved settlements involving FCRA claims. See, e.g., Pietras v. Sentry Ins. Co., 513 F. Supp. 2d 983, 985 (N.D. Ill 2007) (citing "eighteen cases, which settled for an average of $34.59 per class member"); see also, Lengel v. HomeAdvisor, Inc., 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (stating that "[a] $100 gross recovery and net recovery of at least $50 per class member is notably higher than other FCRA disclosure settlements that courts have approved" and collecting cases); Serrano v. Sterling Testing Sys., Inc., 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010) (indicating the per-member recovery in a FCRA action can be significantly below the statutory limit of $1,000 considering the attendant risks of litigation); Bailes v. Lineage Logistics, LLC, 2016 WL 4415356, at *6 (D. Kan. Aug. 19, 2016) (approving an FCRA settlement for $149,205 for a class of 3,430, which correlates to $43.50 per person).

1    Allowing for maximum deductions for attorney fees, costs, service awards, payments to

2 Kutzman and Leonardo for their individual claims, the LWDA payment, payments to the FCRA

3 Class and administration costs, the settlement administrator's preliminary calculations show

4 $924,050[1] available for distribution to members of the California Class, Doc. No. 44 at 3:12-25,

5 which represents roughly 20% of the total maximum estimated damages for the California Class

6 of $4,764,841, as calculated by class counsel and Plaintiffs' damages expert. Doc. No. 34-2, page

7 10 of 106 ¶ 20. While that is a sizeable discount, it is not excessive, particularly given the costs of

8 litigating an action of this scope to completion in comparison to the relatively modest amount of

9 the maximum possible recovery. See Bravo, 2017 WL 708766, at *10; Bellinghausen, 306 F.R.D.

10 at 256.

11    The Court therefore finds that this factor does not weigh against settlement.

12        *d.*    *The Extent of Discovery Complete and Stage of the Proceedings*

13    Courts require the parties to have conducted sufficient discovery to be able to make an

14 informed decision about the value and risks of the action and come to a fair settlement. See Linney

15 v. Cellular Alaska Partnership, 151 F.3d 1234, 1239 (9th Cir. 1998); Adoma, 913 F. Supp. 2d at

16 977.

17    The parties engaged in an all-day mediation in this action, conducted by a mediator with

18 experience in employment class actions. Doc. No. 34-2, page 6 of 106 ¶ 12. Prior to the mediation,

19 class counsel obtained production of employment, payroll, background check and class member

20 information from Defendant, Doc. No. 34-2, page 5 of 106 ¶ 10, page 9 of 106 ¶ 20 & page 12 of

21 106 ¶ 23, and engaged a damages expert with experience in employment cases such as the one at

22 bar to assist in the computation of prospective recoveries on Plaintiffs' claims. Doc. No. 34-2,

23 page 5 of 106 ¶¶ 10, 18. Class counsel also states that it has conducted extensive legal research

24 and analysis in connection with the claims in this action. Doc. No. 34-2, page 5 of 106 ¶ 10.

25    It therefore appears that, in addition to participating in, the parties have engaged in

26

27 ─────────────────

[1] The Court has deducted the $9,700 payment to the FCRA Class ($100 to 97 class members) from the $933,750

28 figure in the Declaration of Orlando Castillejos re: Notice Procedures to arrive at $924,500. See Doc. No. 44 at 3:12-25.

sufficient discovery and case development to have a full understanding of the legal and factual issues underlying this action. This factor supports approval of the settlement agreement.

           *e.*    *The Experience and Views of Counsel*

        The Court must consider the experience and views of counsel regarding the settlement. <u>See</u> <u>Churchill Vill.</u>, 361 F.3d 575; <u>Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Class counsel have significant experience in wage and hour class action litigation, Doc. No. 43-2, page 15 of 106 ¶ 26, and are of the opinion that settlement is "fair, reasonable, and adequate" and "in the best interest of the class." <u>Id.</u>, page 8 of 104, lines 16 through 21. This factor weighs in favor of settlement.

           *f.*    *The Reaction of the Class Members*

        In determining the fairness of a settlement, the Court should consider class member objections to the settlement and the claims rate. <u>See</u> <u>Larsen v. Trader Joes Co.</u>, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014). The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are favorable to the class. <u>Richardson v. THD At–Home Services, Inc.</u>, 2016 WL 1366952, at *6 (E.D. Cal. Apr. 6, 2016) (citation omitted). Here, 96.6% of notice packets were delivered, and no objections or requests for exclusion were filed prior to the deadline. Doc. Nos. 44 at 2:13-23, 3:3-10; Doc. No. 46 at 2:10-14.  Moreover, no members of either class participated in the final approval hearing. <u>See</u> Dkt. No. 47. This factor therefore weighs in favor of settlement.

           *g.*    *Absence of Collusion*

        Where, as here, a settlement is negotiated before class certification, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." <u>In re Bluetooth</u>, 654 F.3d at 946. The settlement agreement here has a clear sailing provision, which is not ideal, but there is no reversion of any settlement funds to the Defendant and the maximum attorney fees—amounting to 25% of the gross fund—are squarely in line with the benchmark for the Ninth Circuit. <u>See</u> <u>In re Bluetooth</u>, 654 F.3d at 947 (referencing a 25% benchmark); <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003) (same); <u>Six (6)</u>

1  *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same), Ross v.

2  Bar None Enterprises, Inc., 2014 WL 4109592, at *10 (E.D. Cal. Aug. 19, 2014) (stating that

3  "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the

4  total settlement value, with 25% considered the benchmark" (quoting Morales v. Stevco, Inc.,

5  2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011)).

6       Further, at $7,500 each, the service awards are somewhat higher than the Court might

7  expect to see, see Hopson v. Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)

8  ("In general, courts have found that $5,000 incentive payments are reasonable."), but the Court

9  cannot find that they are indicative of collusion given the work Plaintiffs performed—and the

10  reputational and financial risk Plaintiffs took—in connection with this action, as reflected in

11  declarations filed by the Plaintiffs. See Doc. Nos. 42-3 through 42-8. Further, as noted above,

12  there have been no objections to or requests for exclusion from the settlement, and this action was

13  settled, at least in part, through mediation. See Vargas v. Central Freight Lines, Inc., 2017 WL

14  4271893, at *7 (S.D. Cal. Sept. 25, 2017).

15       The Court is therefore satisfied that this settlement agreement is not a product of collusion

16  and finds that this factor weighs in favor of approval of the settlement agreement.

17              *h.*    *Conclusion*

18       The Court finds that the factors set forth by the Ninth Circuit weigh in favor of final

19  approval of the settlement. The settlement is fair, reasonable and adequate as required by Rule

20  23(e). Final approval of the settlement agreement will be granted.

21              **IV.    Motion for Attorneys' Fees, Costs and Service Awards**

22       Plaintiffs move for attorneys' fees in the amount of $362,500, litigation costs of $15,000,

23  and service awards for the named Plaintiffs as class representatives in the amount of $7,500 each.

24  Doc. No. 42-1. Plaintiffs' motion will be granted for the reasons set forth below, with a reduction

25  in the size of the requested service awards.

26  **A.    Attorneys' Fees**

27       Rule 23(h) permits the court to "award reasonable attorney's fees and nontaxable costs" in

28  a class action when they "are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h).

1   Even if the parties agree on the amount of a fees award, a district court has an obligation to

2   consider the fees award in the context of the settlement agreement to ensure that it is reasonable.

3   See In Re Bluetooth, 654 F.3d at 941. Where the settlement agreement creates a common fund, a

4   "district court 'has the discretion to apply either the lodestar method or the percentage-of-the-fund

5   method in calculating the fee award.' " Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. May 11,

6   2016) (quoting Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1006 (9th Cir. 2002)).

7   Despite the discretion afforded to the court, the Ninth Circuit has "encouraged courts to guard

8   against an unreasonable result by cross-checking" the percentage-of-the fund method with the

9   lodestar method. In Re Bluetooth, 654 F.3d at 944–945.

10          Here, as noted above, the requested fees are $362,500 and the Gross Settlement Amount is

11   $1,450,000. Doc. No. 42-1, Part III.  Thus, the requested fees comprise 25% of the gross fund,

12   which is squarely in line with the benchmark for the Ninth Circuit. See Stetson v. Grissom, 821

13   F.3d 1157, 1165 (9th Cir. 2016) ("the 'benchmark' award is 25 percent of the fund"); In re

14   Bluetooth, 654 F.3d at 944-45 (similar); Staton, 327 F. 3d at 952 ("This circuit has established

15   25% of the common fund as a benchmark award for attorney fees.").

16          The lodestar, which the Court will apply as a cross-check to the percentage-of-the-fund

17   method, is calculated by multiplying the number of hours reasonably expended on litigation by a

18   reasonable hourly rate. Gonzales v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013). The

19   district court must then determine to what extent, if any, a risk multiplier is warranted. See

20   Stetson, 821 F.3d at 1166. The Ninth Circuit has observed that "[r]isk multipliers incentivize

21   attorneys to represent class clients, who might otherwise be denied access to counsel, on a

22   contingency basis," Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 741 (9th Cir. 2016), and that

23   failure to apply a multiplier—or "risk enhancement"—to "risky" cases can be an abuse of

24   discretion. Stetson, 821 F.3d at 1166.

25          Class counsel provides a billing report showing that as of June 29, 2020, they had

26   expended more than $267,587.50 in attorney time on this matter, with work remaining to complete

27   the settlement. Doc. No. 42-2, Ex. 3. Given the fact that class counsel seeks $362,500 in attorneys'

28   fees, this lodestar implies a multiplier of 1.3 (based solely on work completed by the time the

1    motion for attorney fees was filed), which appears to be reasonable—and even modest—in

2    comparison to cases in this Circuit allowing lodestar multipliers in the 2-to-4 range to compensate

3    counsel for the risk of contingent class action litigation.  See, e.g., Vizcaino v. Microsoft Corp.,

4    290 F.3d 1043, 1050-51 (9th Cir. 2002) (observing that multipliers range from 1.0-4.0 and a "bare

5    majority" fall within the range of 1.5-3.0, and then affirming district court's conclusion that fee

6    award of 3.65 times lodestar amount was reasonable); see also, In re Prudential Ins. Co. Am. Sales

7    Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to

8    four are frequently awarded in common fund cases when the lodestar method is applied." (citation

9    omitted)).

10       The Court notes that the hourly billing rates applied by class counsel in calculating the

11    lodestar—which range from $475 per hour from associates to $795 per hour for the most senior

12    partner, Doc. No. 42-2, Ex. 3—are higher than prevailing rates in the Fresno Division of the

13    Eastern District of California. See Avila v. Cold Spring Granite Co., 2018 WL 400315, at *10

14    (E.D. Cal. Jan. 12, 2018). In *Avila v. Cold Spring Granite Co.*, this Court essentially allowed rates

15    of $400 per hour for attorneys with 20 years or more of experience; $350 per hour for an attorney

16    with approximately 10 years of experience; $250 per hour for an attorney with approximately five

17    years of experience; and $150 per hour for a new attorney with a year or two of experience. 2018

18    WL 400315, at *10-*11.

19       Applying this framework, the Court estimates that appropriate lodestar billing rates for

20    class counsel for an action in the Fresno Division of the Eastern District of California are: (i) $400

21    per hour for Norman Blumenthal and Kyle R. Nordrehaug, who each had 20 years of experience

22    or more as of 2019; (ii) $350 per hour for Aparajit Bhowmik, Nicholas De Blouw, Molly DeSario,

23    Piya Mukherjee, Victoria Rivapalacio and Jeffrey Herman, each of whom had 8 to 13 years of

24    experience as of 2019; and (iii) Charlotte James and Ricardo Ehmann, who had 3 years of

25    experience and 1 year of experience, respectively, as of 2019. See Doc. No. 42-2, Ex. 1, pages 19

26    through 20 of 127. Substituting these rates for class counsel's stated billing rates in the billing

27    summary in Exhibit 3 to the Declaration of Kyle Nordrehaug, Doc. No. 42-2, page 126 through

28    127 of 127, the Court gets a back-of-the-envelope lodestar of approximately $155,000, which,

given the fees request of $362,550 implies a multiplier of 2.3. While that is obviously higher than the 1.3 multiplier based on the class counsel's lodestar calculation, it is still comfortably in line with multipliers applied by other courts in connection with class action contingency cases and not high enough, in the Court's view, to cast doubt on the validation provided by the percentage-of-the-fund method. See e.g., Vizcaino, 290 F.3d at 1050-51 (9th Cir. 2002); Lee v. Glob. Tel*link Corp., 2018 WL 4625677, at *11 (C.D. Cal. Sept. 24, 2018) (applying lodestar multiplier of 3.0); Taylor v. FedEx Freight, Inc., 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) ("Here, the multiplier of 2.26 [] falls within the range of multipliers generally awarded to counsel in successful class action litigation.").

The Court therefore finds that the requested attorneys' fees are reasonable.

**B.    Litigation Costs**

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." Norris v. Mazzola, 2017 WL 6493091, at *14 (N.D. Cal. Dec. 19, 2017) (citation and internal quotation marks omitted); accord Smith v. Am. Greetings Corp., 2016 WL 2909429, at *9 (N.D. Cal. May 19, 2016) ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.' ") (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)). Such expenses commonly include postage, investigation costs, copying costs, hotel bills, meals, messenger services, court costs, electronic research, court reporter costs, delivery fees, and mediation expenses. See, e.g., Ruiz v. XPO Last Mile, Inc., 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017); Leverage v. Traeger Pellet Grills, LLC, 2017 WL 6405619, at *7 (N.D. Cal. Dec. 15, 2017).

Class counsel requests reimbursement for expenses and costs in the amount of $15,000, and provides a fairly detailed statement of account showing that this request is less than the $23,178.26 class counsel actually incurred for costs normally paid by a client, including costs incurred for filing fees, mediation fees and expenses, expert fees, legal research charges, travel expenses and delivery charges. Doc. No. 42-1, page 24 of 26, lines 4 through 11; Doc. No. 42-2, Ex. 3.

1   The Court sees nothing unreasonable or irregular about these costs, particularly since this

2   action involved an all-day mediation and the use of damages expert. The request for $15,000 in

3   litigation costs will be granted.

4   **C.   Service Awards**

5       Representative service awards are "fairly typical in class action cases." Rodriguez v. West

6   Publ'g Corp., 563 F.3d 948, 958–959 (9th Cir. 2009); see Staton, 327 F.3d at 977. Granting a

7   service award is discretionary; in doing so, the court should consider the time and effort expended

8   by a named plaintiff and the risk undertaken in serving as a named plaintiff. Staton, 327 F.3d at

9   977; In re Mego, 213 F.3d at 463. Incentive awards are particularly appropriate in wage-and-hour

10  actions where plaintiffs undertake significant "reputational risk" by bringing suit against their

11  present or former employers. Rodriguez, 563 F.3d at 958–59.

12      The named Plaintiffs seek service awards in the amount of $7,500 each. Doc. No. 42-1,

13  page 24 of 26, lines 12 through 19. In the January 24, 2020 order granting preliminary approval of

14  the settlement, the Court noted that this amount exceeds the $5,000 amount courts have generally

15  found to be reasonable. Doc. No. 36 at 21:28-23:4; see Richardson, 2016 WL 1366952 at *13; see

16  also, Harris v. Vector Marketing Corp., 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (stating

17  that courts have indicated "as a general matter, $5,000 is a reasonable amount"); Hopson v.

18  Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have

19  found that $5,000 incentive payments are reasonable.").

20      In connection with their motion, Plaintiffs have provided citations showing service awards

21  in excess of $5,000 in other cases, Doc. No. 42-1, page 25 of 26, lines 10 through 26, as well as

22  individual declarations outlining the financial and reputational risks each of the named Plaintiffs

23  assumed and the efforts each of the named Plaintiffs made in connection with this litigation,

24  which, on average, involved 40-60 hours of work developing facts, collecting documents, fielding

25  attorney questions and reviewing filings. Doc. Nos. 42-3 through 42-8. In the Court's view,

26  however, these declarations describe work typically performed by named plaintiffs in connection

27  with class actions and do not justify an extraordinary service award, particularly since there was a

28  six named plaintiffs, see In re Online DVD-Rental Antitrust Litig., 779 F.3d at 947 (taking note of

21

1  the number of named plaintiffs in assessing service award), and this was, in most respects, an

2  ordinary wage and hour case. Further, the Court notes that the requested service awards of $7,500

3  each would translate into approximately $150 an hour for the named Plaintiffs' work, which

4  strikes the Court as excessive, particularly inasmuch as service award payments to named

5  Plaintiffs necessarily reduce the funds available for other class members. See Ontiveros, 303

6  F.R.D. at 366 (approving a service award based on a rate of $50 per hour, after finding that an

7  implied rate of $73.80 per hour was too high).

8        The Court will therefore approve a $5,000 service award to each of the named Plaintiffs to

9  bring the awards in line with Ninth Circuit norms, see Richardson, 2016 WL 1366952 at *13, with

10  the $15,000 difference between the amount requested for service awards and the amount approved

11  for service awards to go to class members as set forth in the Settlement Agreement. Doc. No. 43-2,

12  page 59 of 104 (Settlement Agreement § III.B.1.)

13  **D.    Administration Costs**

14        Courts routinely award administration costs associated with providing notice to the class.

15  See, e.g., Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 691 (N.D. Cal. 2016). The

16  settlement provides for up to $25,000.00 to be paid to KCC as the settlement administrator. Doc.

17  No. 34-2, page 26 of 106 (Settlement Agreement § III.B.4.) That amount is reasonable, see, e.g.,

18  Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 484 (E.D. Cal. 2010) (approving a

19  $25,000 administrator fee in a wage and hour case involving 177 potential class members), and as

20  stated in the Court's January 24, 2020 order, payments to KCC of up to $25,000 pursuant to the

21  terms of the Settlement Agreement for services actually rendered in the administration of this

22  settlement are therefore authorized. See Doc. No. 36 at 25:26-27,

**V.    Order**

24  Based on the foregoing, IT IS HEREBY ORDERED THAT:

25      1.  Plaintiffs' Motion for Final Approval of Class Settlement (Doc. No. 43) is GRANTED;

26      2.  The FCRA Class and the California Class have met all of the requirements set forth in

27          Federal Rules of Civil Procedure 23(a) and 23(b)(3);

28      3.  The terms of the proposed Settlement Agreement are fair, adequate and reasonable, and

1    comply with Rule 23(e) of the Federal Rules of Civil Procedure;

2    4.   The notice provided to the members of the FCRA Class and to the members of the

3         California Class, as well as the means by which it was provided, constitutes the best notice

4         practicable under the circumstances and is in full compliance with the United States

5         Constitution, the requirements of Due Process and Rule 23 of the Federal Rules of Civil

6         Procedure. Further, such notice fully and accurately informed settlement class members of

7         all material elements of the lawsuit and proposed class action settlement, and each class

8         member's right and opportunity to object to or opt out of the proposed class action

9         settlement.

10   Further, it is ORDERED THAT:

11   1.   Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards (Doc. No.

12        42) is GRANTED with the modification that the service award for each named Plaintiff

13        will be $5,000, instead of $7,500, with the difference between the total amount requested

14        in service awards and the total amount approved in service awards to be distributed per the

15        terms of Section III.B.4 of the Settlement Agreement;

16   2.   Blumenthal, Nordrehaug Bhowmik De Blouw, LLP are appointed as class counsel and are

17        awarded $362,500 in attorneys' fees and $15,000 in costs;

18   3.   The settlement administrator KCC Class Action Services, LLC is awarded up to $25,000

19        for settlement administration costs;

20   4.   The Court directs the parties to effectuate the settlement terms as set forth in the Settlement

21        Agreement, including in settlement payments amounts sought but not approved for service

22        awards, and directs the settlement administrator to calculate and pay the claims of class

23        members in accordance with the terms set forth in the Settlement Agreement;

24   //

25   //

26   //

27   //

28   //

5.  This action is DISMISSED WITH PREJUDICE, each side to bear its own costs and attorneys' fees except as provided by the Settlement Agreement and this order;

6.  The Clerk of Court shall CLOSE this case; and

7.  The Court RETAINS jurisdiction to consider all further applications arising out of or in connection with the settlement.

IT IS SO ORDERED.

Dated:   October 5, 2020

_____

SENIOR   DISTRICT   JUDGE